CHAD A. READLER
Acting Assistant Attorney General
BRIAN STRETCH
United States Attorney
JOHN R. TYLER
Assistant Director
W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel
Department of Justice, Room 7210
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C.  20044
Telephone:      (202) 514-3495
Facsimile:      (202) 616-8470
E-mail:          scott.simpson@usdoj.gov
COUNSEL FOR DEFENDANTS
*(See signature page for parties represented.)*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COUNTY OF SANTA CLARA,<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | No. 3:17-cv-00574-WHO<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

1

## TABLE OF CONTENTS

2

INTRODUCTION ................................................................................................................. 1

ISSUES PRESENTED ......................................................................................................... 3

BACKGROUND ................................................................................................................... 3

     I.       Broad Executive Discretion in Enforcement of Immigration Law ........................ 3

     II.     Executive Order 13,768 ...................................................................................... 5

     III.    The County's Claims for Emergency Relief .......................................................... 7

ARGUMENT .......................................................................................................................... 8

     I.       Plaintiff Cannot Show Irreparable Harm ............................................................. 9

          A.      The Supreme Court Requires a Likelihood of Immediate
                  Concrete Irreparable Harm Before an Injunction May Issue ..................... 9

          B.      The County Cannot Demonstrate a Likelihood of
                  Immediate, Concrete Irreparable Harm Given the
                  Absence of Any Action under Section 9 .................................................. 10

     II.     The County Cannot Establish a Likelihood of Success on the Merits
              Because Its Claims are Non-Justiciable ............................................................. 15

     III.    The Public Interest and the Balance of Harms Militate
              Against the Injunction Sought .............................................................................. 18

     IV.    No Injunction Should Issue Against the President ............................................... 19

     V.     Any Preliminary Injunction Herein Should Be
              Limited to the Plaintiff ........................................................................................ 19

CONCLUSION ................................................................................................................... 20

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

i

<u>TABLE OF AUTHORITIES</u>

<u>CONSTITUTION</u>

U.S. Const. art. II, § 3 ........................................................................................................ 3

U.S. Const. art. III, § 2, cl. 1 ............................................................................................ 15


<u>CASES</u>

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) .................................................... 3, 16, 17

*Ali v. United States*, 932 F. Supp. 1206 (N.D. Cal. 1996) ............................................. 13

*Am. Trucking Ass'ns v. City of Los Angeles*, 577 F. Supp. 2d 1110 (C.D. Cal. 2008) ................. 14

*Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) ................................. 8

*Arc of Cal. v. Douglas*, 757 F.3d 975 (9th Cir. 2014) ...................................................... 10

*Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057 (N.D. Cal. 2015) ....................... 2, 10

*Arizona Dream Act Coal. v. Brewer*, ___ F.3d ___, No. 15-15307,
2017 WL 461503 (9th Cir. Feb. 2, 2017) ................................................................ 4, 11

*Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492 (2012) .................................... 3

*Bigelow v. Virginia*, 421 U.S. 809 (1975) .............................................................. 16, 17

*Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011 (9th Cir. 2016) .................................. 10

*Campbell v. Feld Entm't Inc.*, No. 12-CV-4233-LHK,
2013 WL 4510629 (N.D. Cal. Aug. 22, 2013) .......................................................... 8

*Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) .................................. 2, 10

*Coal. for a Healthy Cal. v. FCC*, 87 F.3d 383 (9th Cir. 1996) ...................................... 18

*Connecticut v. Massachusetts*, 282 U.S. 660 (1931) .................................................... 12

*Dep't of Def. v. Meinhold*, 510 U.S. 939 (1993) ......................................................... 19

*Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905 (D.C. Cir. 1985) ............................ 16, 17

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................ 15

*Envtl. Def. Fund v. Marsh*, 651 F.2d 983 (5th Cir. 1981) .......................................... 19

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) ................................................ 16

*Haw. Cty. Green Party v. Clinton*, 14 F. Supp. 2d 1198 (D. Haw. 1998) ..................... 16

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

*Kitazato v. Black Diamond Hosp. Invs.*, *LLC*, 655 F. Supp. 2d 1139 (D. Haw. 2009).................. 13

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012)......................................................................... 8

*Los Angeles Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197 (9th Cir. 1980)...................... 10, 13

*Mazurek v. Armstrong,* 520 U.S. 968 (1997) ............................................................................. 8

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)...................................................................... 14

*Miller ex rel. NLRB v. California Pac. Med. Ctr.*, 991 F.2d 536 (9th Cir. 1993)......................... 9

*Mississippi v. Johnson*, 71 U.S. 475 (1866)............................................................................... 19

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)...................................................... 19

*N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104 (9th Cir. 2010) ...................................................... 18

*N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 545 F. Supp. 2d 363 (S.D.N.Y. 2008) ............ 14

*Nat'l Inst. of Family & Life Advocates v. Harris*, 839 F.3d 823 (9th Cir. 2016).......................... 16

*Native Ecosystems Council v. Krueger*, 40 F. Supp. 3d 1344 (D. Mont. 2014) ........................... 10

*Newdow v. Bush*, 391 F. Supp. 2d 95 (D.D.C. 2005)................................................................... 19

*Nken v. Holder*, 556 U.S. 418 (2009)........................................................................................ 18

*Ore. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*,
   288 F.3d 414, 416 (9th Cir. 2002) .......................................................................................... 15

*Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co*.,
   685 F. Supp. 2d 1123 (D. Haw. 2010)................................................................................. 2, 10

*Pollara v. Radiant Logistics Inc.*, No. CV 12-0344 GAF (SPX),
   2012 WL 12887095 (C.D. Cal. Sept. 13, 2012) ...................................................................... 15

*Price v. City of Stockton*, 390 F.3d 1105 (9th Cir. 2004)............................................................. 19

*Prof'l Towing & Recovery Operators of Ill. v. Box*, No. 08 C 4096,
   2008 WL 5211192 (N.D. Ill. Dec. 11, 2008)........................................................................... 14

*RasterOps v. Radius, Inc*., 861 F. Supp. 1479 (N.D. Cal. 1994) ................................................. 10

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ................................................................. 14

*Rubin ex rel. N.L.R.B. v. Vista Del Sol Health Servs., Inc.*,
   80 F. Supp. 3d 1058 (C.D. Cal. 2015) ................................................................................... 18

*Sampson v. Murray*, 415 U.S. 61 (1974) .................................................................................... 13

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012)........................................... 19

*Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624 (9th Cir. 1989)................................... 16, 17

iii

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).................................... 16, 17

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996)........................................................... 19

*Texas v. United States*, 523 U.S. 296 (1998) ......................................................... 16, 17

*Timbisha Shoshone Tribe v. Salazar*, 697 F. Supp. 2d 1181 (E.D. Cal. 2010)............................ 15

*U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC*, 124 F. Supp. 3d 1063 (D. Nev. 2015)......................... 8

*U.S. W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112 (9th Cir. 1999)............................. 16, 17

*United States v. AMC Entm't, Inc.*, 549 F.3d 760 (9th Cir. 2008) ................................. 20

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ...................................................... 3, 16, 17

*Winter v. California Med. Review, Inc.*, 900 F.2d 1322 (9th Cir. 1989)................................ 17, 18

*Winter v. Natural Res. Def. Council*, 530 F. Supp. 2d 1110 (C.D. Cal. 2008) ............................... 9

*Winter v. Natural Res. Def. Council*, 518 F.3d 658 (9th Cir. 2008) ................................ 9

*Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008)......................................... passim

STATUTES

8 U.S.C. § 1373 ............................................................................ passim

8 U.S.C. § 1101(a)(15)(S) ...................................................................... 4

8 U.S.C. § 1182(d)(5)(A) ....................................................................... 4

8 U.S.C. § 1227(a)(1)(E)(iii) .................................................................. 4

8 U.S.C. § 1229b ............................................................................... 4

8 U.S.C. § 1357(g)(1).......................................................................... 5

8 U.S.C. § 1357(g)(10)(B) ..................................................................... 5

REGULATIONS

28 C.F.R. pt. 18 .......................................................................... 11, 20

44 C.F.R. § 206.440 ...................................................................... 11, 20

EXECUTIVE ORDERS

Exec. Order No. 12,807, 57 Fed. Reg. 23,133 (1992) .................................... 4

iv

Exec. Order No. 13,608, 77 Fed. Reg. 26,409 (2012) ...................................................... 4

Exec. Order No. 13,726, 81 Fed. Reg. 23,559 (2016) ...................................................... 4

Exec. Order No. 13,768, 82 Fed. Reg. 8,799 (Jan. 30, 2017) ................................... passim

Exec. Order No. 13,768, § 1, 82 Fed. Reg. 8,799 (Jan. 30, 2017) ................................. 1, 6

Exec. Order No. 13,768, § 2(a), 82 Fed. Reg. 8,799 (Jan. 30, 2017) .............................. 6

Exec. Order No. 13,768, § 4, 82 Fed. Reg. 8,799 (Jan. 30, 2017) .................................... 6

Exec. Order No. 13,768, § 5, 82 Fed. Reg. 8,799 (Jan. 30, 2017) .................................... 6

Exec. Order No. 13,768, § 6, 82 Fed. Reg. 8,799 (Jan. 30, 2017) ...................... 6, 11, 12

Exec. Order No. 13,768, § 7, 82 Fed. Reg. 8,799 (Jan. 30, 2017) .................................... 6

Exec. Order No. 13,768, § 8, 82 Fed. Reg. 8,799 (Jan. 30, 2017) ............................. 6, 12

Exec. Order No. 13,768, § 9, 82 Fed. Reg. 8,799 (Jan. 30, 2017) .......................... passim

Exec. Order No. 13,768, § 10(b), 82 Fed. Reg. 8,799 (Jan. 30, 2017) ........................... 6

Exec. Order No. 13,768, § 11, 82 Fed. Reg. 8,799 (Jan. 30, 2017) ..................... 6, 11, 12

Exec. Order No. 13,768, § 12, 82 Fed. Reg. 8,799 (Jan. 30, 2017) .................................. 6

Exec. Order No. 13,768, § 13, 82 Fed. Reg. 8,799 (Jan. 30, 2017) .................................. 6

Exec. Order No. 13,768, § 14, 82 Fed. Reg. 8,799 (Jan. 30, 2017) .................................. 6

Exec. Order No. 13,768, § 15, 82 Fed. Reg. 8,799 (Jan. 30, 2017) ...................... 1, 7, 12

Exec. Order No. 13,768, § 17, 82 Fed. Reg. 8,799 (Jan. 30, 2017) .................................. 6

Exec. Order No. 13,768, § 18(b), 82 Fed. Reg. 8,799 (Jan. 30, 2017) ........................... 6

OTHER AUTHORITIES

Mem. from Jeh Charles Johnson, Sec'y of Homeland Sec., to Thomas S.
Winkowski, Acting Dir., U.S. Immigration & Customs Enforcement, et al.,
*Policies for the Apprehension, Detention and Removal of Undocumented
Immigrants* (Nov. 20, 2014), https:// www.dhs.gov/ sites/ default/ files/
publications/ 14_1120_ memo_prosecutorial_discretion.pdf ......................................... 4

Mem. from Michael E. Horowitz, Inspector Gen., to Karol V. Mason,
Assistant Att'y Gen., Office of Justice Programs, *Department of Justice
Referral of Allegations of Potential Violations of 8 U.S.C. § 1373 by Grant
Recipients* (May 31, 2016), https:// oig.justice.gov/ reports/ 2016/ 1607.pdf................................ 5

Ltr. from Samuel R. Ramer, Acting Ass't Att'y Gen., Office of Legis.
Affairs to Sens. Elizabeth Warren and Edward J. Markey (Mar. 7, 2017) ............................... 2, 12

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

1

INTRODUCTION

2        On January 25, 2017, the President signed Executive Order 13,768 for the declared

3 purpose of "direct[ing] executive departments and agencies . . . to employ all lawful means to

4 enforce the immigration laws of the United States." *See* Exec. Order No. 13,768, § 1, 82 Fed.

5 Reg. 8,799 (Jan. 30, 2017).  As explained in the Order, aliens who enter the United States

6 illegally and those who overstay or otherwise violate the terms of their admission and engage in

7 criminal conduct present a particularly "significant threat to national security and public safety."

8 *Id.*  Those threats are heightened when jurisdictions choose to violate federal immigration law to

9 shield illegal aliens – many of whom have been incarcerated by federal, state, or local authorities

10 – from federal immigration authorities.  *See id.*

11        To address this threat, the Executive Order states that the Executive Branch's policy is to

12 ensure that States and their political subdivisions comply with existing federal immigration laws.

13 For example, Section 9 of the Order establishes a policy of ensuring that state and local

14 jurisdictions comply with 8 U.S.C. § 1373, which provides that no government entity or official

15 may prohibit or restrict, among other things, the sending or receiving of information regarding the

16 citizenship or immigration status of any individual to federal immigration authorities.  *Id.* § 9, 82

17 Fed. Reg. at 8,801.  The Order is a presidential directive, directed to the Attorney General, the

18 Secretary of Homeland Security, and other federal officials.  It does not purport to alter the

19 existing requirements of Section 1373 (or any other federal law), impose new burdens on state or

20 local jurisdictions, or expand the legal authority of the Secretary or the Attorney General.  Rather,

21 it simply announces the policy of the Executive Branch and directs the Secretary and Attorney

22 General, in their discretion and consistent with their existing legal authority, to ensure that

23 jurisdictions that willfully refuse to comply with Section 1373 not be eligible to receive federal

24 grants, except as deemed necessary for law enforcement purposes.  *Id.*  The Order also instructs

25 the Secretary and the Attorney General to take appropriate actions, and directs them to report to

26 the President on their progress in implementing this and other directives in the Order, first within

27 90 days and then again within 180 days.  *Id.* § 15, 82 Fed. Reg. at 8,802.  Executive Order 13,768

28

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

is not self-executing, however, and the Secretary and Attorney General have not yet taken the several steps necessary to implement the directives of Section 9.[1]

Yet, before such steps or other action have been taken under the Executive Order, the County of Santa Clara has moved for immediate, emergency injunctive relief to prevent defendants from taking hypothetical future actions against it pursuant to Section 9 of the Order. The County's lawsuit is premature. The County does not claim the loss of any federal funds or, for that matter, that any action has been taken against it under the Order; the County does not even allege that such action has been threatened. Indeed, the Secretary has not designated (or even indicated an intent to designate) Santa Clara County as a "sanctuary jurisdiction" in accordance with the process contemplated in Section 9.

For these reasons, the County cannot show the likelihood of "immediate" irreparable harm, an "essential element" of the standard required to obtain emergency injunctive relief. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1071 (N.D. Cal. 2015); *see also Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co*., 685 F. Supp. 2d 1123, 1139 (D. Haw. 2010). Rather than meet this standard, the County instead bases its motion on nothing more than speculation concerning the Order's scope and how the Secretary and Attorney General might interpret and implement it, along with speculation that the County will be a subject of enforcement and might lose federal funds. Such speculative assertions fall far short of demonstrating immediate irreparable harm, which by itself requires that plaintiff's requested emergency relief be denied.

In addition, the County also fails to establish a substantial likelihood of success on the merits of its claims, which are subject to dismissal under the justiciability doctrines of ripeness and standing. Article III of the Constitution requires that a plaintiff have standing and that its claims be ripe for judicial consideration. Because a series of steps remain to implement Section

---

[1] In this regard, the Department of Justice sent a letter to members of Congress, on March 7, 2017, stating that the Department was "in the process of identifying, in its discretion, what actions, if any, can lawfully be taken in order to encourage state and local jurisdictions to comply with federal law." *See* Ltr. from Samuel R. Ramer, Acting Ass't Att'y Gen., Office of Legis. Affairs to Sens. Elizabeth Warren and Edward J. Markey (Mar. 7, 2017) (Attachment 1 hereto).

2

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

9, each of which has had no tangible effect on the plaintiff, the County cannot show the "concrete," "palpable" injury needed for standing, *see Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990), and the Executive Order has not been "formalized and its effects felt in a concrete way" as needed for ripeness.  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).

Notably, the Executive Order does not alter or expand the existing law that governs when the Federal Government may revoke a federal grant where the grantee violates legal requirements.  Instead, the President – pursuant to his express constitutional authority to ensure that federal agencies "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3 – has directed agency heads to utilize their existing legal authorities "to the extent consistent with law," *see* Exec. Order No. 13,768, § 9, in connection with local violations of Section 1373.  In other words, the Executive Order does nothing more than direct enforcement of preexisting duties under federal law.  The County's conjecture to the contrary does not satisfy its burden of justifying the extraordinary relief it seeks, and the Court should accordingly deny plaintiff's motion for preliminary injunction.

## ISSUES PRESENTED

1.  Whether the plaintiff has established that it will suffer immediate, concrete irreparable harm in absence of a preliminary injunction.

2.  Whether the plaintiff has established that it can satisfy the requirements of justiciability, including standing and ripeness.

3.  Whether the public interest and the balance of equities militate against the preliminary injunction sought.

4.  Whether the plaintiff can seek a nationwide preliminary injunction or only an injunction limited to the plaintiff itself.

## BACKGROUND

I.   Broad Executive Discretion in Enforcement of Immigration Law

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492,

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

1  2497 (2012).  Through the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*,

2  Congress has granted the Executive Branch significant authority to control the entry, movement,

3  and other conduct of foreign nationals in the United States.

4  Under the INA, the Department of Homeland Security ("DHS"), the Department of

5  Justice, and other agencies of the Executive Branch administer and enforce the immigration laws.

6  Likewise, the INA permits the Executive Branch to exercise considerable executive discretion to

7  direct enforcement pursuant to federal policy objectives.  *See Arizona Dream Act Coal. v.*

8  *Brewer*, ___ F.3d ___, No. 15-15307, 2017 WL 461503, at *9-10 (9th Cir. Feb. 2, 2017) ("By

9  necessity, the federal statutory and regulatory scheme, as well as federal case law, vest the

10  Executive with very broad discretion to determine enforcement priorities.").  Several Presidents

11  have exercised this discretion by Executive Order.  And they have done so in differing ways,

12  reflecting their individual judgments as to how best to take care that the laws of the United States

13  be faithfully executed.  *See*, *e.g.*, Exec. Order No. 13,726, 81 Fed. Reg. 23,559 (2016)

14  ("Suspending Entry Into the United States of Persons Contributing to the Situation in Libya");

15  Exec. Order No. 13,608, 77 Fed. Reg. 26,409 (2012) ("Suspending Entry Into the United States of

16  Foreign Sanctions Evaders With Respect to Iran and Syria"); Exec. Order No. 12,807, 57 Fed.

17  Reg. 23,133 (1992) (interdiction of undocumented aliens on oceangoing vessels).  Following the

18  President's lead, the Secretary of Homeland Security has also consistently exercised similar

19  executive discretion in the enforcement of federal immigration law.  *See*, *e.g.*, Mem. from Jeh

20  Charles Johnson, Sec'y of Homeland Sec., to Thomas S. Winkowski, Acting Dir., U.S.

21  Immigration & Customs Enforcement, et al., *Policies for the Apprehension, Detention and*

22  *Removal of Undocumented Immigrants* (Nov. 20, 2014), https:// www.dhs.gov/ sites/ default/

23  files/ publications/ 14_1120_memo_prosecutorial_discretion.pdf (rescinded Feb. 20, 2017).

24  The INA contains a number of provisions regarding the involvement of state and local

25  authorities in the enforcement of immigration law.  For example, Section 287(g) of the INA

26  authorizes the Secretary to enter into written agreements with a state or local government under

27  which officers of such government may "perform a function of an immigration officer in relation

28

4

to the investigation, apprehension, or detention of aliens in the United States."  8 U.S.C.

§ 1357(g)(1).  Likewise, the INA provides for cooperation with DHS in the "identification,

apprehension, detention, or removal of aliens not lawfully present in the United States[,]" even

without a formal cooperation agreement.  *Id*. § 1357(g)(10)(B).  Another provision, 8 U.S.C.

§ 1373, ensures the sharing of immigration information between federal and state actors:

> Notwithstanding any other provision of Federal, State, or local law, a Federal,
> State, or local government entity or official may not prohibit, or in any way
> restrict, any government entity or official from sending to, or receiving from,
> [federal immigration authorities] information regarding the citizenship or
> immigration status, lawful or unlawful, of any individual.

*Id*. § 1373(a).  Section 1373 also proscribes prohibiting or restricting any government entity from

"maintaining" information regarding the immigration status of any individual.  *Id*. § 1373(b).

Well before the issuance of Executive Order 13,768, the compliance of state and local

governments with Section 1373 has been of interest to federal agencies because such govern-

ments are recipients of federal grants.  For example, the Inspector General of the Department of

Justice issued a memorandum on May 31, 2016, as plaintiff notes (Doc. 1 at 16 n.4, 19 n.6),

describing a concern that several state and local governments receiving federal grants were not

complying with 8 U.S.C. § 1373.  *See* Mem. from Michael E. Horowitz, Inspector Gen., to Karol

V. Mason, Assistant Att'y Gen., Office of Justice Programs, *Department of Justice Referral of*

*Allegations of Potential Violations of 8 U.S.C. § 1373 by Grant Recipients* (May 31, 2016),

https:// oig.justice.gov/ reports/ 2016/ 1607.pdf.  After reviewing a sample of local ordinances

regarding communication with federal immigration officials, the Inspector General observed that

some applications of the ordinances appeared to be inconsistent with Section 1373.  *Id*. at 4-8.

Nevertheless, the report noted, "[N]o one at DHS or [Immigration and Customs Enforcement] has

made a formal legal determination whether certain state and local laws or policies violate Section

1373, and we are unaware of any Department of Justice decision in that regard."  *Id*. at 8 n.12.

II.     Executive Order 13,768

The President signed Executive Order 13,768, *Enhancing Public Safety in the Interior of*

*the United States*, on January 25, 2017.  82 Fed. Reg. 8,799 (Jan. 30, 2017).  The Order seeks to

5

1  "[e]nsure the faithful execution of the immigration laws," including the INA.  *See id.* § 2(a), 82

2  Fed. Reg. at 8,799.  It sets forth several policies and priorities regarding enforcement of federal

3  immigration law within the United States.  The Order likewise instructs federal officials,

4  including the Secretary of Homeland Security, the Attorney General, and the Director of the

5  Office of Management and Budget ("OMB"), to use "all lawful means" to enforce those laws.

6  *See id.* §§ 1, 4, 82 Fed. Reg. at 8,799-800.

7       As permitted by the INA, Executive Order 13,768 establishes priorities regarding aliens

8  who are subject to removal from the United States under the immigration laws.  *Id.* § 5, 82 Fed.

9  Reg. at 8,800.  Several provisions of the Order instruct officials to take actions directing future

10  conduct, including instructions to promulgate certain regulations within one year, to take "all

11  appropriate action" to hire additional immigration officers, to seek agreements with state and

12  local officials under Section 287(g) of the INA (referred to above), to develop a program to

13  ensure adequate prosecution of criminal immigration offenses, and to establish an office to

14  provide certain services to victims of crimes committed by removable aliens.  *Id.* §§ 6, 7, 8, 11,

15  13, 82 Fed. Reg. at 8,799-802.  Throughout, the Order specifies that federal officials are to take

16  these actions as "permitted by law" or as "consistent with law."  *Id.* §§ 7, 8, 9(a), 10(b), 12, 14,

17  17, 18(b), 82 Fed. Reg. at 8,799-802.

18       Section 9 of the Executive Order establishes "the policy of the executive branch to ensure,

19  to the fullest extent of the law, that a State, or a political subdivision of a State, shall comply with

20  8 U.S.C. 1373."  Section 9(a) directs to federal agencies to achieve that policy:

21       In furtherance of this policy, the Attorney General and the Secretary [of Homeland
         Security], in their discretion and to the extent consistent with law, shall ensure that
22       jurisdictions that willfully refuse to comply with 8 U.S.C. 1373 (sanctuary juris-
         dictions) are not eligible to receive Federal grants, except as deemed necessary for
23       law enforcement purposes by the Attorney General or the Secretary.  The Secre-
         tary has the authority to designate, in his discretion and to the extent consistent
24       with law, a jurisdiction as a sanctuary jurisdiction.  The Attorney General shall
         take appropriate enforcement action against any entity that violates 8 U.S.C. 1373,
25       or which has in effect a statute, policy, or practice that prevents or hinders the
         enforcement of Federal law.
26

27

28

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

6

1   *Id.* § 9(a), 82 Fed. Reg. at 8,801.  Section 9 further directs the Secretary to publicize, each week,

2   "a comprehensive list of criminal actions committed by aliens and any jurisdiction that ignored or

3   otherwise failed to honor any detainers with respect to such aliens."  *Id.* § 9(b), 82 Fed. Reg. at

4   8,801.  It also instructs the Director of OMB to "obtain and provide relevant and responsive

5   information on all Federal grant money that currently is received by any sanctuary jurisdiction."

6   *Id.* § 9(c), 82 Fed. Reg. at 8,801.

7       Finally, the Executive Order directs the Secretary of Homeland Security and the Attorney

8   General to report on their progress in implementing the Order, first "within 90 days of the date of

9   [the] order and again within 180 days of the date of [the] order."  *Id.* § 15, 82 Fed. Reg. at 8,802.

10  III.    The County's Claims for Emergency Relief

11      The County seeks a preliminary injunction against the implementation of Section 9 of the

12  Executive Order (Doc. 26).  The County acknowledges that the Order does not define "sanctuary

13  jurisdiction" (Doc. 1 ¶ 139).  And the County does not claim to have been designated as a

14  "sanctuary jurisdiction" in accordance with the process contemplated in Section 9.  The plaintiff

15  nevertheless alleges that it has adopted "policies and practices" that "conflict with the President's

16  stated policies" (*id.* at 12).

17      Similarly, while acknowledging that the Order does not define "Federal grants" (*id.*

18  ¶ 139), the County nonetheless speculates that the term "must" be interpreted as applying to "all

19  federal funds, whatever their source" (Doc. 26 at 4 n.4).  Thus, even though Section 9(a) refers

20  only to "Federal grants" and to the Secretary of Homeland Security and Attorney General, the

21  County alleges that implementation of this provision would deprive the County of *all* of its

22  federal funding – grants, reimbursements, and fee-for-service funds (Doc. 1 ¶ 48) – in areas

23  including social services, health care, and emergency services, such as Medicaid reimbursements

24  for a local hospital (Doc. 26 at 10).  The County does not allege, however, that its federal funding

25  has been withheld or revoked, or that any federal agency has threatened such action.

26

27

28

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

1

ARGUMENT

2          A preliminary injunction is "an extraordinary and drastic remedy" that should not be

3    granted "unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Lopez v.*

4    *Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972

5    (1997) (per curiam).  The Supreme Court has clarified the requirements for a preliminary

6    injunction in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008).  Under *Winter*,

7    "[a] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the

8    merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the

9    balance of equities tips in his favor, *and* that an injunction is in the public interest." *Id*. at 20

10   (emphasis added).  Critically, this is "a four-part conjunctive test, not . . . a four-factor balancing

11   test"; thus, *Winter* "reject[ed] the sliding-scale test as to the irreparable-injury prong" previously

12   used by some courts.  *U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC*, 124 F. Supp. 3d 1063, 1070 (D.

13   Nev. 2015); *see Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)

14   ("To the extent that our cases have suggested a lesser standard, they are no longer controlling, or

15   even viable.") (footnote omitted).  Further, "[t]he party seeking the injunction bears the burden of

16   proving these elements." *Campbell v. Feld Entm't Inc.*, No. 12-CV-4233-LHK, 2013 WL

17   4510629, at *4 (N.D. Cal. Aug. 22, 2013).

18          Plaintiff's motion fails for at least four reasons.  First, the Executive Order does not

19   change existing law, but merely instructs the Attorney General and the Secretary of Homeland

20   Security to "employ all lawful means to ensure the faithful execution of the immigration laws of

21   the United States," including 8 U.S.C. § 1373. *See* Exec. Order No. 13,768, §§ 4, 9, 82 Fed. Reg.

22   at 8,800, 8,801.  Second, the County cannot show the imminent irreparable harm necessary for

23   emergency relief because the Secretary and the Attorney General must take a series of steps

24   before Section 9 of Executive Order 13,768 could have any tangible effect on the County.  Third,

25   the purported injury that plaintiff alleges is both monetary and remediable, meaning that there is

26   an adequate remedy at law.  Finally, and relatedly, plaintiff lacks a "likelihood of success" given

27   the justiciability flaws in its complaint.  Among them, the County has failed to establish that (1) it

28

8

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

1    has suffered "concrete" injury, as it must under the standing doctrine; (2) it has suffered the kind

2    of substantial harm that the Supreme Court has identified as necessary to overcome ripeness

3    concerns in cases asserting pre-enforcement challenges to agency action; and (3) its claims satisfy

4    the "fitness" element of the ripeness inquiry because unimplemented directives contained in an

5    Executive Order are not fit for judicial review under binding precedent.  Thus, because plaintiff's

6    claims are subject to dismissal on several grounds, it necessarily cannot show a "likelihood of

7    success" on the merits of those claims.  For these reasons, the motion for preliminary injunction

8    must be denied.

9    I.      Plaintiff Cannot Show Irreparable Harm

10            A.      The Supreme Court Requires a Likelihood of Immediate,

11                    Concrete Irreparable Harm Before an Injunction May Issue

12           As reflected in *Winter*, which focused on irreparable harm, *see* 555 U.S. at 22, satisfying

13   the requirement of immediate and irreparable harm is "crucial" to securing a preliminary

14   injunction.  *Miller ex rel. NLRB v. California Pac. Med. Ctr.*, 991 F.2d 536, 543 (9th Cir. 1993).

15   The district court in *Winter* had granted a preliminary injunction, relying on a "'sliding scale'

16   whereby the required degree of harm increases as the likelihood of success decreases," and vice

17   versa.  *Winter v. Natural Res. Def. Council*, 530 F. Supp. 2d 1110, 1113 n.4 (C.D. Cal. 2008).

18   Preliminary relief was appropriate, the court held, because plaintiffs had demonstrated "a strong

19   likelihood of prevailing on the merits . . . and there [was] a possibility of irreparable harm."  *Id.* at

20   1118.  The Ninth Circuit affirmed on the same basis.  *Winter v. Natural Res. Def. Council*, 518

21   F.3d 658, 697 (9th Cir. 2008).

22           The Supreme Court reversed.  In doing so, the Court noted that its "frequently reiterated

23   standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is

24   *likely* in the absence of an injunction."  555 U.S. at 22.  "Issuing a preliminary injunction based

25   only on a possibility of irreparable harm," the Supreme Court said, "is inconsistent with our

26   characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a

27   clear showing that the plaintiff is entitled to such relief."  *Id.*  Thus, a party seeking a preliminary

28

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

injunction must establish both that "he is *likely* to succeed on the merits [and] that he is *likely* to suffer irreparable harm in the absence of preliminary relief" – as well as "that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 20 (emphasis added); *see Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (plaintiff "must demonstrate that irreparable injury is likely . . . not merely . . . possible").

Further, "[t]he threat of irreparable harm must . . . be 'immediate.'" *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1071 (N.D. Cal. 2015) (quoting *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016). That injury, moreover, must be "real and concrete" rather than merely "abstract." *See Los Angeles Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1201 (9th Cir. 1980); *Native Ecosystems Council v. Krueger*, 40 F. Supp. 3d 1344, 1349 (D. Mont. 2014).

Finally, where the plaintiff "has failed to establish a likelihood of irreparable harm," a court need not even consider the other requirements. *Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co.*, 685 F. Supp. 2d 1123, 1139 (D. Haw. 2010); *see RasterOps v. Radius, Inc.*, 861 F. Supp. 1479, 1498 (N.D. Cal. 1994).

B.   The County Cannot Demonstrate a Likelihood of Immediate, Concrete Irreparable Harm Given the Absence of Any Action under Section 9

Measured against this legal backdrop, the County has not established the threat of "immediate" and "concrete" irreparable harm necessary to secure a preliminary injunction. The Executive Order subjects the County not to new law, but only to the bounds of existing law. Section 9 directs the Secretary and Attorney General to use their existing legal authority to ensure that jurisdictions that "willfully refuse to comply with 8 U.S.C. 1373" will not be eligible to receive Federal grants "to the extent consistent with law." By its terms, that provision incorporates the body of law that governs federal grants and defines when they can be declined for failing to satisfy a condition – here, compliance with Section 1373. By specifying that the

10

1   authority under Section 9 be exercised "to the extent consistent with law," the President has

2   directed the Secretary and the Attorney General to follow the governing legal limitations, such as

3   the procedural requirements for making or revoking the federal grants. *See, e.g.*, 28 C.F.R. pt. 18

4   (Office of Justice Programs Hearing and Appeal Procedures); 44 C.F.R. § 206.440 (appeals in

5   Hazard Mitigation Grant Program). There is no indication that the Order will be implemented

6   inconsistent with those limitations or with any other applicable laws.

7          Furthermore, Executive Order 13,768 is not self-executing. Rather, it sets forth policies

8   and priorities, and directs certain federal agencies to take additional discretionary actions going

9   forward to enforce federal immigration laws more fully. Many of the Order's provisions thus

10  merely direct federal agencies to begin internal preparations to fully enforce federal law. For

11  example, the Order directs the Secretary of Homeland Security to promulgate certain regulations

12  within a year, and it directs the Secretary and the Attorney General to develop a program to

13  ensure adequate prosecution of criminal immigration offenses. *See* Exec. Order No. 13,768, §§ 6,

14  11, 82 Fed. Reg. at 8,800, 8,801. In several other respects, the Order is a presidential directive to

15  the Secretary and Attorney General guiding their future exercise of discretion in the enforcement

16  of immigration law. *See Arizona Dream Act Coal.*, ___ F.3d at ___, 2017 WL 461503, at *10

17  ("By necessity, the federal statutory and regulatory scheme, as well as federal case law, vest the

18  Executive with very broad discretion to determine enforcement priorities.").

19         Thus, Section 9 of the Order directs the Secretary to designate a state or local government

20  as a "sanctuary jurisdiction." Section 9 likewise directs the Secretary and the Attorney General to

21  ensure that such jurisdictions are ineligible to receive federal grants, "except as deemed necessary

22  for law enforcement purposes." By expressly directing that such future discretionary agency

23  actions be exercised "consistent with law," *see* Exec. Order No. 13,768, § 9, the Order

24  incorporates, among other things, the law regarding grant conditions and procedures.

25         As a result, a series of future actions must occur before Section 9 could have any effect on

26  a receipt of federal grant funds: Among other things, (1) the Attorney General and the Secretary

27  of Homeland Security must determine exactly what constitutes "willful refusal to comply with 8

28

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

1   U.S.C. § 1373"; (2) the Secretary must identify any state or local governments that constitute

2   "sanctuary jurisdictions" and make formal designations to that effect; (3) the Secretary and the

3   Attorney General must decide which federal funding sources are "necessary for law enforcement

4   purposes"; (4) the Secretary and the Attorney General must then determine how to "ensure" that

5   sanctuary jurisdictions are ineligible to receive the relevant grant funds; and (5) the Secretary and

6   the Attorney General must determine how to implement those actions "consistent with law." The

7   Order thus explicitly contemplates that some time will be required for implementation.[2]

8          The County does not allege that the Federal Government has taken any of these actions.

9   Nor does the County claim that it has been designated as a "sanctuary jurisdiction" or that it has

10  been denied any federal funds. The County likewise does not allege that it has been notified that

11  any funds will be denied. None of those actions has occurred, and those events may never occur.

12  The County's conjecture about the "possibility" of future harm alone does not justify preliminary

13  injunctive relief. *See Winter*, 555 U.S. at 22; *see also Connecticut v. Massachusetts*, 282 U.S.

14  660, 674 (1931) (An injunction "will not be granted against something merely feared as liable to

15  occur at some indefinite time in the future.").

16         The County's arguments regarding current irreparable harm are unconvincing. First,

17  plaintiff asserts that it provides certain services whose costs the federal government later

18  reimburses and that it must choose, therefore, either to provide the services without an assurance

19  of reimbursement or to discontinue the services (Doc. 26 at 23). But far from irreparable harm,

20  this is instead a risk that grant recipients always face: If the terms of the grant require compliance

21

22         [2] *See, e.g.*, Exec. Order No. 13,768, § 6 (requiring Secretary to promulgate regulations "to
    ensure the assessment and collection of all fines and penalties that the Secretary is authorized
23  under the law to assess and collect from aliens unlawfully present in the United States and from
    those who facilitate their presence in the United States"); § 8 (requiring Secretary to enter into
24  agreements with state and local officials under Section 287(g) of INA); § 11 (requiring Secretary
    and Attorney General "to develop and implement a program that ensures that adequate resources
25  are devoted to the prosecution of criminal immigration offenses"); § 15 (requiring Secretary and
    Attorney General to "report on the progress of the directives contained in this order within 90
26  days . . . and again within 180 days."); *see also* Ltr. from Samuel R. Ramer, Acting Ass't Att'y
    Gen., Office of Legis. Affairs to Sens. Elizabeth Warren and Edward J. Markey (Mar. 7, 2017)
27  (Attachment 1 hereto).

28
                                                   12
    Opposition Prelim. Inj.
    No. 3:17-cv-00574-WHO

1   with certain federal laws, such as Section 1373, and those terms are not followed, then the

2   recipient is in violation of the grant conditions, and there is a risk that the Federal Government

3   may enforce those terms to the detriment of the grantee and its financial planning.  If the grant

4   language does not require compliance with Section 1373, the Executive Order does not purport to

5   give the Secretary or Attorney General the unilateral authority to alter those terms.  This is

6   underscored by the fact that Executive Order 13,768 does not change the law, but only instructs

7   the Attorney General and the Secretary of Homeland Security to enforce existing law.  Moreover,

8   the County's claimed harm is economic in nature, and "[i]t is well established that mere economic

9   injury does not constitute irreparable harm." *Kitazato v. Black Diamond Hosp. Invs.*, *LLC*, 655

10  F. Supp. 2d 1139, 1147 (D. Haw. 2009); *see Sampson v. Murray*, 415 U.S. 61, 89 (1974) ("Mere

11  injuries, however substantial, in terms of money, time and energy necessarily expended in the

12  absence of a[n] [injunction], are not enough.  The possibility that adequate compensatory or other

13  corrective relief will be available at a later date, in the ordinary course of litigation, weighs

14  heavily against a claim of irreparable harm."); *Ali v. United States*, 932 F. Supp. 1206, 1210

15  (N.D. Cal. 1996) ("Economic injury alone does not support a finding of irreparable harm.").  The

16  reason, of course, is that there is an adequate remedy at law for the loss of monies.

17          Second, the County asserts that the Executive Order "has created a cloud of financial

18  uncertainty" over its budgetary decision-making (Doc. 26 at 23-24).  Budgetary "uncertainty,"

19  however, is not the "real and concrete injury" sufficient to justify a preliminary injunction.  *See*

20  *Los Angeles Mem'l Coliseum Comm'n*, 634 F.2d at 1201.  Moreover, governmental budgeting

21  always suffers from some amount of uncertainty, in relation to both costs (which are based on

22  services provided) and income (which is based in part on tax revenues).  In other words, the

23  plaintiff cannot accurately claim that an otherwise certain endeavor is now less certain.  Legal

24  restrictions, moreover, always create some risk, whether the likelihood of enforcement is low or

25  high.

26          Furthermore, even if any hypothetical "uncertainty" regarding the County's future receipt

27  of federal funds constituted irreparable harm (which it does not), an injunction setting aside the

28

13

1   Order would not remedy any such harm.  As noted already, the Order does not alter or expand

2   existing law governing the Federal Government's discretion to revoke or deny a grant where the

3   grantee violates legal requirements.  Thus, any uncertainty the plaintiff might hypothetically face

4   would exist regardless of whether the Court were to enjoin the Order itself.  Additionally, the

5   terms and conditions of an existing grant are governed by the grant documents, and any "claw

6   back [of] previously appropriated funds retroactively" (Doc. 26 at 21) could occur only pursuant

7   to those terms and conditions.

8          Third, the County asserts that "as a matter of law, the deprivation of constitutional rights

9   unquestionably constitutes irreparable injury" (Doc. 26 at 22, internal quotation marks omitted).

10  The County does not, however, allege a "deprivation" of its "constitutional rights."  Instead, the

11  County points to a claimed violation of the constitutional *structures* that govern relationships

12  among the branches of the Federal Government and between the federal and state governments,

13  which is insufficient to establish irreparable injury.  "[W]hile a violation of constitutional rights

14  can constitute *per se* irreparable harm . . . *per se* irreparable harm is caused only by violations of

15  'personal' constitutional rights . . . to be distinguished from provisions of the Constitution that

16  serve 'structural' purposes, like the Supremacy Clause."  *N.Y. State Rest. Ass'n v. N.Y. City Bd. of*

17  *Health*, 545 F. Supp. 2d 363, 367 (S.D.N.Y. 2008) (internal quotation marks omitted), *rev'd on*

18  *other grounds*, 556 F.3d 114 (2d Cir. 2009); *accord Prof'l Towing & Recovery Operators of Ill.*

19  *v. Box*, No. 08 C 4096, 2008 WL 5211192, at *13 (N.D. Ill. Dec. 11, 2008) ("[T]he Court

20  concludes that Plaintiffs are not entitled to a presumption of irreparable harm because the

21  constitutional rights at stake here are not 'personal' in nature."); *see Am. Trucking Ass'ns v. City*

22  *of Los Angeles*, 577 F. Supp. 2d 1110, 1127 (C.D. Cal. 2008) (noting that "[i]n the case of

23  Supremacy Clause violations," the presumption of irreparable harm "is not necessarily

24  warranted"), *rev'd on other grounds*, 559 F.3d 1046 (9th Cir. 2009).  Not surprisingly, therefore,

25  the cases on which plaintiff relies address alleged violations of *individual* constitutional rights,

26  none of which are involved here (Doc. 26 at 22).  *See Rodriguez v. Robbins*, 715 F.3d 1127,

27  1131-32, 1144-45 (9th Cir. 2013) (alleging that detention pending removal from United States,

28

14

without judicial bond hearing, violated individual due process rights); *Melendres v. Arpaio*, 695

F.3d 990, 994-95, 1002 (9th Cir. 2012) (alleging that local law enforcement officers had engaged

in racial profiling in violation of plaintiffs' individual Fourth and Fourteenth Amendment rights);

*see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that "[t]he loss of *First Amendment*

freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury")

(emphasis added).

In sum, the plaintiff has not demonstrated, and cannot "demonstrate[,] that irreparable

injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22.

II.     The County Cannot Establish a Likelihood of Success on the Merits
        Because Its Claims Are Non-Justiciable

A party seeking a preliminary injunction must also "establish that [it] is *likely* to succeed

on the merits." *Winter*, 555 U.S. at 20 (emphasis added).  The County cannot establish such a

likelihood in this case because its claims are non-justiciable under principles of ripeness and

standing. *See Pollara v. Radiant Logistics Inc.*, No. CV 12-0344 GAF (SPX), 2012 WL

12887095, at *5 (C.D. Cal. Sept. 13, 2012) (noting that "standing to bring a claim . . . is a

necessary predicate to demonstrate a likelihood of success on the merits"); *Timbisha Shoshone

Tribe v. Salazar*, 697 F. Supp. 2d 1181, 1188 (E.D. Cal. 2010) ("Because [Defendant] raises

serious questions as to the Court's subject matter jurisdiction over Plaintiffs' claim, Plaintiffs fail

to establish the likelihood of success on the merits of their claims.").  For the same reasons that

plaintiff cannot establish the "irreparable injury" needed for a preliminary injunction, it also

cannot show a likelihood of success on the merits because its claims are subject to dismissal.

*Winter*, 555 U.S. at 20.

Under Article III of the Constitution, the jurisdiction of the federal courts extends only to

"Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Matters outside this rubric are "non-

justiciable." *Ore. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*, 288

F.3d 414, 416 (9th Cir. 2002).  Two principles of justiciability are involved here:  standing and

ripeness.  "While standing is concerned with *who* is a proper party to litigate a particular matter,

15

1   the doctrines of mootness and ripeness determine *when* that litigation may occur." *Haw. Cty.*

2   *Green Party v. Clinton*, 14 F. Supp. 2d 1198, 1201 (D. Haw. 1998).  Where a plaintiff lacks

3   standing or its claims are unripe, the court lacks jurisdiction.  *See Nat'l Inst. of Family & Life*

4   *Advocates v. Harris*, 839 F.3d 823, 832 (9th Cir. 2016).

5           To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must

6   demonstrate an "injury in fact," a "fairly traceable" causal connection between the injury and

7   defendant's conduct, and redressability.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

8   102-03 (1998).  The injury needed for constitutional standing must be "concrete," "objective,"

9   and "palpable," not merely "abstract" or "subjective."  *See Whitmore v. Arkansas*, 495 U.S. 149,

10  155 (1990); *Bigelow v. Virginia*, 421 U.S. 809, 816-17 (1975).  "[S]tanding 'is perhaps the most

11  important of [the jurisdictional] doctrines.'"  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231

12  (1990).

13          Constitutional justiciability also requires that a dispute be ripe for judicial consideration –

14  that is, that the challenged action "has been formalized and its effects felt in a concrete way by the

15  challenging parties."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).  In other words, "[a]

16  claim is not ripe for adjudication if it rests upon contingent future events that may not occur as

17  anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998)

18  (internal quotation marks omitted).

19          In assessing ripeness in the context of a "pre-enforcement challenge" to a statutory or

20  administrative enactment, the courts consider "both the fitness of the issues for judicial decision

21  and the hardship to the parties of withholding court consideration."  *Abbott Labs.*, 387 U.S. at

22  149.  "A claim is fit for decision if the issues raised are primarily legal, do not require further

23  factual development, and the challenged action is final."  *Standard Alaska Prod. Co. v. Schaible*,

24  874 F.2d 624, 627 (9th Cir. 1989).  In other words, a court considers whether the court and the

25  parties would "benefit from deferring review until the agency's policies have crystallized and the

26  question arises in some more concrete and final form."  *Eagle-Picher Indus., Inc. v. EPA*, 759

27  F.2d 905, 915 (D.C. Cir. 1985) (internal quotation marks omitted); *see U.S. W. Commc'ns v. MFS*

28

16

1   *Intelenet, Inc.*, 193 F.3d 1112, 1119 (9th Cir. 1999) (finding that claim was not fit for decision

2   where administrative proceedings had not concluded and court would "benefit" from outcome of

3   those proceedings). Finally, "[t]o meet the hardship requirement, a litigant must show that

4   withholding review would result in direct and immediate hardship and would entail more than

5   possible financial loss." *Winter v. California Med. Review, Inc.*, 900 F.2d 1322, 1325 (9th Cir.

6   1989) (internal quotation marks omitted).

7          Applying these standards here, the plaintiff cannot show the "injury in fact" needed for

8   constitutional standing, *Steel Co.*, 523 U.S. at 102-03, and its claims are not ripe for judicial

9   review, *Abbott Labs.*, 387 U.S. at 148-49. Given the many steps that must be taken before any

10  federal funds might be withheld under Section 9 of the Executive Order, the County has not

11  suffered any "concrete," "objective," and "palpable" injury. *See Whitmore*, 495 U.S. at 155;

12  *Bigelow*, 421 U.S. at 816-17. Although plaintiff alleges that the Order has created a "cloud of

13  financial uncertainty" (Doc. 26 at 23), any such "cloud" would be "abstract" and "subjective"

14  rather than "concrete." *See Whitmore*, 495 U.S. at 155; *Bigelow*, 421 U.S. at 816-17.

15         Further, plaintiff's claims are not ripe because Section 9 of the Order "has [not] been

16  formalized and its effects felt in a concrete way." *Abbott Labs.*, 387 U.S. at 148-49.

17  Implementation of Section 9 "rests upon [several] contingent future events" – including

18  clarification of some of its terms – and those terms may ultimately be defined such as to exclude

19  the County or its grants or otherwise to greatly diminish the Order's "anticipated" impact. *See*

20  *Texas*, 523 U.S. at 300. Because Section 9 has not yet been implemented and the Secretary of

21  Homeland Security and Attorney General must take several actions before that can occur, this

22  Court would greatly "benefit from deferring review" until the parameters of its implementation

23  "have crystallized and the question arises in some more concrete and final form" that is "fit" for

24  judicial decision. *Eagle-Picher Indus., Inc.*, 759 F.2d at 915; *see U.S. W. Commc'ns*, 193 F.3d at

25  1119; *see also Abbott Labs.*, 387 U.S. at 149.

26         Finally, the uncertainties surrounding the implementation of Section 9 and the need for

27  "factual development" greatly outweigh any "hardship" to the County from awaiting those

28

17

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

developments. *Standard Alaska Prod. Co.*, 874 F.2d at 627. As noted already, several steps must be taken before Section 9 can be implemented, including a determination as to the federal grants covered, how to limit those grants "consistent with law," and what constitutes a "sanctuary jurisdiction." Those determinations will have a bearing on whether Section 9 is eventually applied to the plaintiff or some federal grants that currently benefit the plaintiff. Thus, any "hardship" to the County is far from "immediate," and its protestation of budgetary "uncertainty" does not constitute actual "financial loss" – which, even where it occurs, does not qualify as "hardship" under this analysis. *See Winter*, 900 F.2d at 1325.

III.   **The Public Interest and the Balance of Equities Militate**
       **Against the Injunction Sought**

Lastly, a party seeking a preliminary injunction must "establish . . . that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Where the Federal Government is the defendant, these factors "merge" into one. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The most pertinent and concretely expressed public interest in relation to this case is contained in 8 U.S.C. § 1373, which expresses the public interest in supporting the enforcement of federal immigration law. Section 9 of the Order is meant simply to "ensure" compliance with that statute. *See* Exec. Order No. 13,768, § 9(a), 82 Fed. Reg. at 8,801. Therefore, the public interest lies in allowing the Executive Branch to pursue the necessary steps to implement this Order. *See N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1113 (9th Cir. 2010) (noting that "it is obvious that compliance with the law is in the public interest"); *Rubin ex rel. NLRB v. Vista del Sol Health Servs., Inc.*, 80 F. Supp. 3d 1058, 1108 (C.D. Cal. 2015) (stating that "the public interest favors ensuring compliance with federal law"). Additionally, the public interest prohibits judicial "advisory opinions," which the County's motion would require this Court to render in relation to an Executive Order that has not yet been implemented. *See Coal. for a Healthy Cal. v. FCC*, 87 F.3d 383, 386 (9th Cir. 1996).

Opposition Prelim. Inj.
No. 3:17-cv-00574-WHO

18

1  IV.   No Injunction Should Issue Against the President

2          Even if an injunction were otherwise appropriate, it should not be issued against the

3  President of the United States, whom the County has chosen to name as a defendant.  A request to

4  enjoin the President "draws the Court into serious separation-of-powers issues. . . . [T]he

5  Supreme Court has sent a clear message that an injunction should not be issued against the

6  President for official acts."  *Newdow v. Bush*, 391 F. Supp. 2d 95, 105, 106 (D.D.C. 2005); *see*

7  *Mississippi v. Johnson*, 71 U.S. 475, 500 (1866); *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir.

8  1996) (noting that the Supreme Court has issued a "stern admonition" that injunctive relief

9  against the President personally is an "extraordinary measure not lightly to be undertaken").

10  V.   Any Preliminary Injunction Herein Should Be
          Limited to the Plaintiff
11

12          Even if the Court were to conclude that plaintiff has satisfied the requirements for a

13  preliminary injunction, the Court should not enter the "nationwide" injunction that the County

14  seeks (Doc. 26 at i).  "[A]n injunction must be narrowly tailored to affect only those persons over

15  which [the court] has power, and to remedy only the specific harms shown by the plaintiffs, rather

16  than to enjoin all possible breaches of the law."  *Price v. City of Stockton*, 390 F.3d 1105, 1117

17  (9th Cir. 2004) (internal quotation marks omitted).  Thus, courts routinely deny requests for

18  nationwide injunctive relief.  *See Dep't of Def. v. Meinhold*, 510 U.S. 939 (1993) (staying

19  nationwide injunction insofar as it "grants relief to persons other than" named plaintiff); *Skydive*

20  *Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012) (affirming district court's

21  refusal to grant nationwide relief).

22          Here, the preliminary injunction is sought by the County of Santa Clara, which has no

23  legitimate interest in the Executive Order's effect on any other jurisdiction.  Thus, the Court

24  should not enter an injunction that is broader than necessary to prevent any irreparable harm to

25  the plaintiff (although, as discussed above, there is none).  Any injunction should not extend to

26  any other state or local governments.  *See, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S.

27  139, 163 (2010) (narrowing injunction in part because the plaintiffs "do not represent a class, so

28

19

1   they could not seek to enjoin such an order on the ground that it might cause harm to other

2   parties"); *see also Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 1006 (5th Cir. 1981) (court must take

3   into account "the larger interests of society that might be adversely affected by an overly broad

4   injunction").  A nationwide injunction would not only be overbroad; it also would effectively

5   enable one district judge to prevent the government from defending the constitutionality of the

6   Executive Order in any other court, and interfere with the development of the law in other

7   circuits.  *See United States v. AMC Entm't, Inc.*, 549 F.3d 760, 773 (9th Cir. 2008).

8           Furthermore, a nationwide injunction would be especially inappropriate here because

9   Section 9 of the Order would impact different jurisdictions differently, once steps are taken to

10   implement it "consistent with law."  The way in which the Order might eventually apply to any

11   individual jurisdiction will depend on that jurisdiction's policies and practices and the specific

12   federal grant terms and procedures that are at issue with respect to the grants received or applied

13   for by the jurisdiction.  No nationwide, universal injunction could possibly account for that

14   diversity.

                                    <u>CONCLUSION</u>

15

16           Accordingly, plaintiff's motion for preliminary injunction should be denied.

17   Dated:  March 9, 2017

18
                                            Respectfully submitted,
19

20                                          CHAD A. READLER
                                            Acting Assistant Attorney General

21
                                            BRIAN STRETCH
22                                          United States Attorney

23                                          JOHN R. TYLER
                                            Assistant Director
24

25                                          /s/ W. Scott Simpson

26                                          _____
                                            W. SCOTT SIMPSON (Va. Bar #27487)
27                                          Senior Trial Counsel

28
                                            20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attorneys, Department of Justice
Civil Division, Room 7210
Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:   (202) 514-3495
Facsimile:   (202) 616-8470
E-mail:        scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS
DONALD J. TRUMP, President of the
United States; JOHN F. KELLY, Secretary of
Homeland Security; JEFFERSON B.
SESSIONS, III, Attorney General of
the United States; MICK MULVANEY,
Director of the Office of Management and
Budget

21