CHAD A. READLER
Acting Assistant Attorney General
BRIAN STRETCH
United States Attorney
JOHN R. TYLER
Assistant Director
W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel
Department of Justice, Room 7210
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C.  20044
Telephone:      (202) 514-3495
Facsimile:      (202) 616-8470
E-mail:         scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS
DONALD J. TRUMP, President of the
United States; JOHN F. KELLY, Secretary of
Homeland Security; JEFFERSON B.
SESSIONS, III, Attorney General of
the United States; MICK MULVANEY,
Director of the Office of Management and
Budget

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| COUNTY OF SANTA CLARA, | |
|---|---|
| Plaintiff, | No. 3:17-cv-00574-WHO |
| v. | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINT AND AUTHORITIES** |
| DONALD J. TRUMP, *et al*., | |
| Defendants. | Date:      July 19, 2017 |
| | Time:      2:00 p.m. |

1

2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

INTRODUCTION .................................................................................................................. 1

ISSUES PRESENTED ........................................................................................................... 3

STATUTORY AND ADMINISTRATIVE BACKGROUND.................................................... 4

     I.       Broad Executive Discretion in Enforcement of Immigration Law ........................ 4

     II.     Executive Order 13,768 ....................................................................................... 6

     III.    The AG Memorandum ......................................................................................... 7

PROCEDURAL BACKGROUND ........................................................................................... 8

ARGUMENT ......................................................................................................................... 8

     I.       Plaintiff Lacks Standing and Its Claims Are Unripe........................................... 11

     II.     Plaintiff Fails to State Any Viable Claim Regarding the
            Executive Order, Which Is an Internal Directive and Does
            Not Directly Affect the Plaintiff ...................................................................... 11

     III.    Plaintiff Fails to State a Viable Challenge to Section 9(a)
            of the Executive Order, as Elucidated by the AG Memorandum ....................... 13

            A.     Plaintiff Fails to State a Viable Claim under
                    the Separation of Powers.......................................................................... 13

            B.     Plaintiff Fails to State a Viable Claim under
                    the Spending Clause.................................................................................. 14

            C.     Plaintiff Fails to State a Viable Claim that
                    Section 9(a) Is Unconstitutionally Vague ................................................. 19

            D.     Plaintiff Fails to State a Viable Claim Regarding
                    Procedural Due Process............................................................................ 21

     IV.    Plaintiff's Claim that the "Appropriate Enforcement Action"
            Provision of Section 9(a) Violates the Tenth Amendment
            Is Non-Justiciable........................................................................................... 22

CONCLUSION...................................................................................................................... 25

27

28

1

## TABLE OF AUTHORITIES

2

3
CONSTITUION

4
U.S. Const. Art. I, § 8, cl. 1 ................................................................................................ 13, 14

5
U.S. Const., Art. III, § 2 ............................................................................................................... 8

6

7
U.S. Const. art. III, § 2, cl. 1 ...................................................................................................... 23

8
CASES

9
*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ................................................................ 11, 23, 24

10
*Aguiar v. Wells Fargo Bank, N.A.*, No. 12-CV-03653 YGR,
11
    2012 WL 5915124 (N.D. Cal. Nov. 26, 2012) ........................................................................ 2

12
*Am. Fed'n of State, Cty. & Mun. Employees v. Scott*,
    717 F.3d 851 (11th Cir. 2013) ...................................................................................... 11, 14, 15

13
*Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957 (9th Cir. Feb. 2, 2017) ................................... 4

14
*Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492 (2012) ........................................ 4, 21, 25

15
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 9

16
*Barbour v. Washington Metro. Area Transit Auth.*, 374 F.3d 1161 (D.C. Cir. 2004) .................. 17

17
*Bigelow v. Virginia*, 421 U.S. 809 (1975) .................................................................................. 23

18
*Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002) ................. 7, 8

19
*Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*,
20
    288 F.3d 414 (9th Cir. 2002) ................................................................................................. 22

21
*Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156 (9th Cir. 2016) ........................... 9

22
*Chen v. Schiltgen*, No. C-94-4094 MHP, 1995 WL 317023 (N.D. Cal. May 19, 1995) .............. 11

23
*Cty. of Santa Clara v. Trump*, No. 17-CV-00485-WHO,
2017 WL 1459081 (N.D. Cal. Apr. 25, 2017) ................................................................ 13, 14, 16

24
*DKT Mem'l Fund Ltd. v. AID*, 887 F.2d 275 (D.C. Cir. 1989) .................................................... 13

25
*Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905 (D.C. Cir. 1985) ............................................... 24

26
*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) ................................................................. 23

27
*Haw. Cty. Green Party v. Clinton*, 14 F. Supp. 2d 1198 (D. Haw. 1998) .................................... 23

28

*Humanitarian Law Project v. U.S. Treasury Dep't,*
578 F.3d 1133 (9th Cir. 2009) .................................................................................. 10, 20, 21

*In re Apple Iphone Antitrust Litig.*, 846 F.3d 313 (9th Cir. 2017) ................................................. 9

*In re ATM Fee Antitrust Litig.*, No. C 04-2676 CRB, 2010 WL 2557519
(N.D. Cal. June 21, 2010) ............................................................................................................. 9

*Legal Aid Soc'y of Alameda County v. Brennan,* 608 F.2d 1319 (9th Cir. 1979) ......................... 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................................... 9

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ................................................................................... 21

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ..................................................... 16, 17

*Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646 (9th Cir. 1988) ...................................................... 2

*N.Y. v. United States*, 505 U.S. 144 (1992) ................................................................................... 17

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012) .................................................... 19

*Nat'l Inst. of Family & Life Advocates v. Harris*, 839 F.3d 823 (9th Cir. 2016) .......................... 23

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ............................................................................. 9

*NTEU v. Bush*, 891 F.2d 99 (5th Cir. 1989) ............................................................................. 11, 14

*Ore. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*,
288 F.3d 414 (9th Cir. 2002) ...................................................................................................... 23

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ................................................. 15

*Renne v. Geary*, 501 U.S. 312 (1991) ............................................................................................. 9

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) ............................................................... 9

*SEIU, Local 82 v. D.C.,* 608 F. Supp. 1434  (D.D.C. 1985) .......................................................... 20

*Skilling v. United States*, 561 U.S. 358  (2010) ............................................................................ 20

*South Dakota v. Dole*, 483 U.S. 203 (1987) .......................................................................... passim

*Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624 (9th Cir. 1989) ......................................... 24

*State of Cal. v. United States*, 104 F.3d 1086 (9th Cir. 1997) ...................................................... 18

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ................................................ 9, 23, 24

*Tenaska Washington Partners II, L.P. v. United States*, 34 Fed. Cl. 434 (1995) ........................... 7

*Texas v. United States*, 523 U.S. 296 (1998) ............................................................................... 24

*Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004) .............................................. 19, 20

*U.S. W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112 (9th Cir. 1999)....................................24

*United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012)........................................21, 25

*United States v. Pickard*, 100 F. Supp. 3d 981 (E.D. Cal. 2015)....................................12

*United States v. Salerno*, 481 U.S. 739 (1987) ........................................................ passim

*United States v. South Carolina*, 720 F.3d 518 (4th Cir. 2013).............................21, 25

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008) ...................10, 19, 20

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ........................................................11, 23, 24

*Winter v. California Med. Review, Inc.*, 900 F.2d 1322 (9th Cir. 1989)........................................24


## STATUTES

8 U.S.C. §§ 1101 *et seq.*................................................................................................4

8 U.S.C. § 1103(c)(1)....................................................................................................7

8 U.S.C. § 1324.............................................................................................................21

8 U.S.C. § 1324a...........................................................................................................21

8 U.S.C. § 1325.............................................................................................................21

8 U.S.C. § 1357(g)(1)....................................................................................................5

8 U.S.C. § 1357(g)(10)(B) ............................................................................................5

8 U.S.C. § 1373.............................................................................................................passim

28 U.S.C. § 512............................................................................................................2, 7

42 U.S.C. § 3712(a) .....................................................................................................14

42 U.S.C. § 3752(a)(5)(D) ...........................................................................................14

Pub. L. No. 104-208, Div. C, Title VI, § 642, 110 Stat. 3009 (1996) ...........................5


## REGULATIONS

2 C.F.R. § 200.341 .......................................................................................................22

28 C.F.R. § 0.5(c)........................................................................................................2, 7

28 C.F.R. pt. 18 ............................................................................................................22

EXECUTIVE ORDERS

Exec. Order No. 13,608, 77 Fed. Reg. 26,409 (2012) ........................................................ 4

Exec. Order No. 13,726, 81 Fed. Reg. 23,559 (2016) ...................................................... 4

Exec. Order No. 13,768, 82 Fed. Reg. 8,799 (Jan. 30, 2017) .................................. passim

OTHER AUTHORITIES

Mem. from Att'y Gen. for All Dep't Grant-Making Components (May 22, 2017) .............. passim

Mem. from John Kelly, Sec'y of Homeland Sec., to Kevin McAleenan,
   Acting Comm'r, U.S. Customs and Border Protection, et al.,
   *Enforcement of the Immigration Laws to Serve the National Interest* (Feb. 20, 2017).............. 5

Mem. from Michael E. Horowitz, Inspector Gen., to Karol V. Mason,
   Assistant Att'y Gen., Office of Justice Programs, *Department of Justice*
   *Referral of Allegations of Potential Violations of 8 U.S.C. § 1373 by*
   *Grant Recipients* (May 31, 2016) ......................................................................... 5, 6

Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the*
   *Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1319-20 (2000) ........................................ 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on Wednesday, July 19, 2017, at 2:00 p.m., or as soon thereafter as counsel may be heard, before The Honorable William H. Orrick, in Courtroom 2, 17th Floor, of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, the defendants will move, and hereby do move, for dismissal of this action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  This motion is based on the following Memorandum of Points and Authorities, the evidence and records on file in this action, and any other written or oral evidence or argument that may be presented at or before the time this motion is heard by the Court.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On January 25, 2017, the President signed Executive Order 13,768 for the declared purpose of "direct[ing] executive departments and agencies . . . to employ all lawful means to enforce the immigration laws of the United States."  *See* Exec. Order No. 13,768, § 1, 82 Fed. Reg. 8,799 (Jan. 30, 2017).  Section 9 of the Order, which is the subject of this litigation, directs the Attorney General and the Secretary of Homeland Security ("Secretary"), "in their discretion and to the extent consistent with law, [to] ensure that jurisdictions that willfully refuse to comply with 8 U.S.C. 1373 . . . are not eligible to receive Federal grants, except as deemed necessary for law enforcement purposes . . . ."  *Id*. § 9(a).  Section 9 also instructs the Attorney General to take "appropriate enforcement action" against any entity that violates Section 1373 or has a statute or policy that "prevents or hinders the enforcement of Federal law."  *Id*.  Section 1373 provides, among other things, that no government entity or official may prohibit or restrict the sending or receiving of information regarding the citizenship or immigration status of any individual to federal immigration authorities.  8 U.S.C. § 1373(a).

---

[1] Plaintiff names "DOES 1-100" as defendants in this matter but does not identify those individuals or specify the capacity in which they are being sued (Doc. 1 ¶ 24).  Undersigned counsel does not purport to represent those individuals, and claims against them are not at issue in this motion to dismiss.  Moreover, because those individuals have not been named or served, granting this motion would resolve this litigation in its entirety.

Motion to Dismiss; Memorandum
No. 3:17-cv-00574-WHO

1    The Order is a presidential directive, directed to the Attorney General, the Secretary, and

2  other federal officials.  It does not purport to alter the existing requirements of Section 1373 (or

3  any other federal law), to impose new burdens on state or local jurisdictions, or to expand the

4  legal authority of the Attorney General or the Secretary.  Rather, it simply announces the policy

5  of the Executive Branch and directs the Attorney General and the Secretary, in their discretion

6  and consistent with their existing legal authority, to ensure that jurisdictions that willfully refuse

7  to comply with Section 1373 not be eligible to receive federal grants and to take enforcement

8  action as appropriate.  *Id.*

9    The Attorney General, in the exercise of his discretion under Section 9(a) of the Order and

10  his overall responsibility to advise executive department heads, *see* 28 U.S.C. § 512; 28 C.F.R.

11  § 0.5(c), has issued authoritative, binding guidance regarding the implementation of Section 9(a).

12  *See* Mem. from Att'y Gen. for All Dep't Grant-Making Components (May 22, 2017) (Attachment

13  1 hereto) (hereinafter AG Mem.).[2]  Among other things, the AG Memorandum provides (1) that

14  the grant eligibility provision in Section 9(a) applies "solely to federal grants administered by the

15  Department of Justice or the Department of Homeland Security ["DHS"], and not to other sources

16  of federal funding[,]" (2) that the Department of Justice ("DOJ") will require jurisdictions

17  applying for certain DOJ-administered grants "to certify their compliance with federal law,

18  including 8 U.S.C. § 1373," (3) that the certification will be required only where the agency is

19  "statutorily authorized to impose such a condition," (4) that "[a]ll grantees will receive notice of

20  their obligation to comply with section 1373," and (5) that only "jurisdiction[s] that fail[] to

21  certify compliance with section 1373 will be ineligible to receive [an] award[]."  AG Mem. at 1-2.

22

23  _____

24        [2] This Court can freely consider the AG Memorandum on this motion to dismiss without affecting the nature of the motion.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th

25  Cir. 1988) ("[I]t is proper for the district court to take judicial notice of matters of public record outside the pleadings and consider them for purposes of the motion to dismiss.") (internal

26  quotation marks omitted); *Aguiar v. Wells Fargo Bank, N.A.*, No. 12-CV-03653 YGR, 2012 WL 5915124, at *2 (N.D. Cal. Nov. 26, 2012) (stating that court "may consider matter that is properly

27  the subject of judicial notice, such as court filings and other public records, without converting a motion to dismiss into one for summary judgment").

28

1    The AG Memorandum further establishes that Santa Clara County lacks standing in this

2    case and that its claims are unripe; thus, all of plaintiff's claims herein should be dismissed for

3    lack of jurisdiction.  Further, to the extent the Court addresses plaintiff's individual claims, each

4    claim must be dismissed under either Rule 12(b)(6) or 12(b)(1) of the Federal Rules of Civil

5    Procedure, particularly in light of the AG Memorandum.  Given that the grant eligibility

6    provision in Section 9(a) will apply only to certain grants administered by DOJ and DHS and

7    only where the imposition of such a condition is statutorily authorized, and given that grantees

8    will be asked to certify their compliance with 8 U.S.C. § 1373 as part of the grant process, the

9    County cannot state viable claims that the grant eligibility provision violates the Separation of

10   Powers or the Spending Clause (Doc. 1 ¶¶ 118-134).  This is especially true given that these

11   claims are facial challenges to an Executive Order, and plaintiff cannot show that "no set of

12   circumstances exists under which the [Order] would be valid."  *United States v. Salerno*, 481 U.S.

13   739, 745 (1987).

14        Also in light of the AG Memorandum, plaintiff cannot state viable claims that Section 9(a)

15   of the Order is unconstitutionally vague or that it violates procedural due process (Doc. 1

16   ¶¶ 138-148).  The AG Memorandum authoritatively clarifies and limits the meaning and scope of

17   Section 9(a), and incorporates the procedural requirements for making or revoking federal grants.

18   Finally, given that no action has been taken against Santa Clara County pursuant to the provision

19   in the Executive Order instructing the Attorney General to take "appropriate enforcement action"

20   against certain entities, the Court lacks subject matter jurisdiction over plaintiff's challenge to that

21   provision under the Tenth Amendment (*id*. ¶¶ 149-152).

22        Accordingly, the Court should dismiss plaintiff's Complaint for failure to state a claim on

23   which relief can be granted and for lack of subject matter jurisdiction.

24                                    ISSUES PRESENTED

25        1. Whether the plaintiff has established its standing and the ripeness of its claims.

26        2. Whether the plaintiff can challenge an Executive Order that constitutes only an internal

27   Executive Branch directive and has no direct effect on the plaintiff.

28

3.  Whether the plaintiff has stated a viable claim that the grant eligibility provision in Section 9(a) of the Executive Order violates the Separation of Powers.

4.  Whether the plaintiff has stated a viable claim that the grant eligibility provision exceeds the Spending Power.

5.  Whether the plaintiff has stated a viable claim that Section 9(a) of the Order is unconstitutionally vague.

6.  Whether the plaintiff has stated a viable claim that Section 9(a) violates procedural due process requirements.

7.  Whether the Court has subject matter jurisdiction over plaintiff's claim that the "appropriate enforcement action" provision in Section 9(a) violates the Tenth Amendment.

<u>STATUTORY AND ADMINISTRATIVE BACKGROUND</u>

I.      Broad Executive Discretion in Enforcement of Immigration Law

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492, 2497 (2012).  Through the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq*., Congress granted the Executive Branch significant authority to control the entry, movement, and other conduct of foreign nationals in the United States.  Under the INA, the Department of Homeland Security, the Department of Justice, and other agencies of the Executive Branch administer and enforce the immigration laws.  Likewise, the INA permits the Executive Branch to exercise considerable executive discretion to direct enforcement pursuant to federal policy objectives.  *See Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 967 (9th Cir. Feb. 2, 2017) ("By necessity, the federal statutory and regulatory scheme, as well as federal case law, vest the Executive with very broad discretion to determine enforcement priorities.").  Several Presidents have exercised this discretion by Executive Order, and they have done so in differing ways, reflecting their individual judgments as to how best to take care that the laws of the United States be faithfully executed. *See*, *e.g*., Exec. Order No. 13,726, 81 Fed. Reg. 23,559 (2016) ("Suspending Entry Into the United States of Persons Contributing to the Situation in Libya"); Exec. Order No. 13,608, 77 Fed. Reg. 26,409 (2012) ("Suspending Entry Into the United States of Foreign Sanctions Evaders

With Respect to Iran and Syria").  The Secretary has also consistently exercised similar executive

discretion in the enforcement of federal immigration law.  *See*, *e.g*., Mem. from John Kelly, Sec'y

of Homeland Sec., to Kevin McAleenan, Acting Comm'r, U.S. Customs and Border Protection, et

al., *Enforcement of the Immigration Laws to Serve the National Interest* (Feb. 20, 2017).[3]

       The INA contains a number of provisions regarding the involvement of state and local

authorities in the enforcement of immigration law.  For example, Section 287(g) of the INA

authorizes the Secretary to enter into written agreements with a state or local government under

which officers of such government may "perform a function of an immigration officer in relation

to the investigation, apprehension, or detention of aliens in the United States."  8 U.S.C.

§ 1357(g)(1).  Likewise, the INA provides for cooperation with DHS in the "identification,

apprehension, detention, or removal of aliens not lawfully present in the United States," even

without a formal cooperation agreement.  *Id*. § 1357(g)(10)(B).  Another provision, 8 U.S.C.

§ 1373, ensures the sharing of information between federal and state actors:

> Notwithstanding any other provision of Federal, State, or local law, a Federal,
> State, or local government entity or official may not prohibit, or in any way
> restrict, any government entity or official from sending to, or receiving from,
> [federal immigration authorities] information regarding the citizenship or
> immigration status, lawful or unlawful, of any individual.

*Id*. § 1373(a); *see* Pub. L. No. 104-208, Div. C, Title VI, § 642, 110 Stat. 3009, 3009-707 (1996).

Section 1373 also proscribes prohibiting or restricting any government entity from "maintaining"

information regarding the immigration status of any individual.  8 U.S.C. § 1373(b).

       Well before the issuance of Executive Order 13,768, the compliance of state and local

governments with Section 1373 has been of interest to federal agencies because such govern-

ments are recipients of federal grants.  For example, the Inspector General of the Department of

Justice issued a memorandum on May 31, 2016, as plaintiff notes (Doc. 1 ¶ 43), describing a

concern that several state and local governments receiving federal grants were not complying

with 8 U.S.C. § 1373.  *See* Mem. from Michael E. Horowitz, Inspector Gen., to Karol V. Mason,

---

[3]  This memorandum is available at https://www.dhs.gov/ sites/ default/ files/ publications/ 17_0220_S1_Enforcement-of-the-Immigration-Laws-to-Serve-the-National-Interest.pdf.

Assistant Att'y Gen., Office of Justice Programs, *Department of Justice Referral of Allegations of Potential Violations of 8 U.S.C. § 1373 by Grant Recipients* (May 31, 2016), *available at* https://oig.justice.gov/reports/2016/1607.pdf.  Although the Inspector General observed that some applications of certain local ordinances might be inconsistent with Section 1373, *id*. at 4-8, the report nevertheless noted that "no one at DHS . . . has made a formal legal determination whether certain state and local laws or policies violate Section 1373, and we are unaware of any Department of Justice decision in that regard."  *Id*. at 8 n.12.

II.     Executive Order 13,768

The President signed Executive Order 13,768, *Enhancing Public Safety in the Interior of the United States*, on January 25, 2017.  82 Fed. Reg. 8,799 (Jan. 30, 2017).  The Order seeks to "[e]nsure the faithful execution of the immigration laws," including the INA.  *See id*. § 2(a), 82 Fed. Reg. at 8,799.  It sets forth several policies and priorities regarding enforcement of federal immigration law within the United States, and it instructs certain federal officials to use "all lawful means" to enforce those laws.  *See id*. §§ 1, 4, 82 Fed. Reg. at 8,799-800.

As permitted by the INA, Executive Order 13,768 establishes priorities regarding aliens who are subject to removal from the United States under the immigration laws.  *Id*. § 5, 82 Fed. Reg. at 8,800.  Several provisions of the Order instruct officials to take actions directing future conduct, including instructions to promulgate certain regulations within one year, to take "all appropriate action" to hire additional immigration officers, to seek agreements with state and local officials under Section 287(g) of the INA (referred to above), to develop a program to ensure adequate prosecution of criminal immigration offenses, and to establish an office to provide certain services to victims of crimes committed by removable aliens.  *Id*. §§ 6, 7, 8, 11, 13, 82 Fed. Reg. at 8,799-802.  Throughout, the Order specifies that federal officials are to take these actions as "permitted by law" or as "consistent with law."  *Id*. §§ 7, 8, 9(a), 10(b), 12, 14, 17, 18(b), 82 Fed. Reg. at 8,799-802.

Section 9 of the Executive Order provides that "[i]t is the policy of the executive branch to ensure, to the fullest extent of the law, that a State, or a political subdivision of a State, shall comply with 8 U.S.C. 1373."  Section 9(a) directs federal agencies to achieve that policy:

> In furtherance of this policy, the Attorney General and the Secretary [of Homeland Security], in their discretion and to the extent consistent with law, shall ensure that jurisdictions that willfully refuse to comply with 8 U.S.C. 1373 (sanctuary jurisdictions) are not eligible to receive Federal grants, except as deemed necessary for law enforcement purposes by the Attorney General or the Secretary.  The Secretary has the authority to designate, in his discretion and to the extent consistent with law, a jurisdiction as a sanctuary jurisdiction.  The Attorney General shall take appropriate enforcement action against any entity that violates 8 U.S.C. 1373, or which has in effect a statute, policy, or practice that prevents or hinders the enforcement of Federal law.

*Id.* § 9(a), 82 Fed. Reg. at 8,801.  Section 9 also instructs the Director of the Office of Management and Budget to "obtain and provide relevant and responsive information on all Federal grant money that currently is received by any sanctuary jurisdiction." *Id.* § 9(c), 82 Fed. Reg. at 8,801.

III.    The AG Memorandum

On May 22, 2017, the Attorney General issued a Memorandum regarding the implementation of Executive Order 13,768.  *See* AG Mem. at 1.  The Attorney General has a statutory duty to advise executive department heads on "questions of law," 28 U.S.C. § 512, and to furnish formal legal opinions to executive agencies, 28 C.F.R. § 0.5(c).  Also, although the Secretary principally administers the immigration laws, the INA provides that "the determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(c)(1).  By longstanding tradition and practice, the Attorney General's legal opinions are treated as authoritative by the heads of executive agencies.  *See, e.g.*, *Tenaska Washington Partners II, L.P. v. United States*, 34 Fed. Cl. 434, 439 (1995); Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1319-20 (2000).

The AG Memorandum sets forth in a formal, conclusive manner the administration's interpretation of Section 9(a) of the Executive Order.  The Memorandum specifies that the Order does not "purport to expand the existing statutory or constitutional authority of the Attorney General and the Secretary of Homeland Security in any respect," but rather instructs those officials to take certain action, "to the extent consistent with the law."  AG Mem. at 2; *see Bldg.*

1   *& Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002) (noting that the

2   President is merely wielding his "supervisory authority over the Executive Branch" where he

3   "directs his subordinates" to take certain action "but only '[t]o the extent permitted by law'").

4   The AG Memorandum further clarifies that the grant eligibility provision in Section 9(a) is

5   limited "solely to federal grants administered by [DOJ] or [DHS]," and to grants requiring the

6   applicant to "certify . . . compliance with federal law, including 8 U.S.C. § 1373, as a condition

7   for receiving an award." AG Mem. at 1, 2. Only "jurisdiction[s] that fail[] to certify compliance

8   with [8 U.S.C. § 1373] will be ineligible to receive [an] award[]" pursuant to the grant eligibility

9   provision. *Id.* In other words, the provision applies only where an applicant or grant recipient

10  has had the choice either to certify compliance with 8 U.S.C. § 1373 as an express condition of

11  eligibility to participate in a certain grant program, or to refuse to certify compliance and thereby

12  render itself ineligible to participate in the program. The AG Memorandum also makes clear that,

13  with respect to Section 1373 compliance conditions, DOJ and DHS may impose such conditions

14  only pursuant to the exercise of "existing statutory or constitutional authority," and only where

15  "grantees will receive notice of their obligation to comply with section 1373." AG Mem. at 2.

16  Lastly, the Attorney General states that, "[a]fter consultation with the Secretary of Homeland

17  Security, [he has] determined that, for purposes of enforcing the Executive Order, the term

18  'sanctuary jurisdiction' will refer only to jurisdictions that 'willfully refuse to comply with 8

19  U.S.C. 1373.'" *Id.*

20                              PROCEDURAL BACKGROUND

21          Santa Clara County filed this action on February 3, 2017 (Doc. 1). Plaintiff filed a motion

22  for preliminary injunction against the implementation of Section 9 of the Executive Order, which

23  the Court granted on April 25, 2017 (Doc. 98). Defendants filed a motion for reconsideration or

24  clarification of the preliminary injunction on May 23, 2017 (Doc. 113), which remains pending.

25                                       ARGUMENT

26          A claim should be dismissed under Rule 12(b)(1) if the court lacks subject matter

27  jurisdiction to consider it. The jurisdiction of the federal courts is limited to "Cases" and

28  "Controversies." U.S. Const., Art. III, § 2. "Jurisdiction is power to declare the law, and when it

Motion to Dismiss; Memorandum                    8
No. 3:17-cv-00574-WHO

ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record," *Renne v. Geary*, 501 U.S. 312, 316 (1991), and "the party asserting subject matter jurisdiction has the burden of proving its existence," *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Additionally, a claim should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it "fail[s] to state a claim upon which relief can be granted." A motion under Rule 12(b)(6) "tests the legal sufficiency" of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On such a motion, the district court accepts all "plausible," "well-pleaded" factual allegations as true, *In re Apple Iphone Antitrust Litig.*, 846 F.3d 313, 315 (9th Cir. 2017); *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016), but need not accept "a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint is subject to dismissal if it fails to "state a claim to relief that is plausible on its face." *Id.* "A complaint may be dismissed for failure to state a claim where the factual allegations do not raise the right to relief above the speculative level." *In re ATM Fee Antitrust Litig.*, No. C 04-2676 CRB, 2010 WL 2557519, at *4 (N.D. Cal. June 21, 2010).

Plaintiff's Complaint contains five claims: Count 1 alleges that the grant eligibility provision in Section 9(a) of the Executive Order violates the constitutional Separation of Powers and the Spending Clause (Doc. 1 ¶¶ 118-134).[4] Count 2 alleges that Section 9(a) of the Order is unconstitutionally vague under the Fifth Amendment, and Count 3 alleges that Section 9(a) violates the procedural due process requirements of the Fifth Amendment. Count 4 alleges that the provision in Section 9(a) requiring the Attorney General to take "appropriate enforcement action" against certain entities violates the Tenth Amendment. All of these claims should be dismissed for lack of standing and ripeness under Rule 12(b)(1), as made even clearer by the AG

[4] Count 1 is entitled "Violation of the Separation of Powers Inherent in the U.S. Constitution," but it argues that the grant eligibility provision violates both the constitutional Separation of Powers and the Spending Clause.

1    Memorandum.  Also, all of plaintiff's claims against the Executive Order should be dismissed

2    under Rule 12(b)(6) because the Order is only an internal Executive Branch directive with no

3    direct effect on the City.

4         Assuming the Court reaches the merits, plaintiff's first four claims should be dismissed

5    for failure to state a claim on which relief can be granted under Rule 12(b)(6), and the last claim

6    should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  In relation to the

7    merits of Count 1, the AG Memorandum makes clear that the grant eligibility provision will be

8    applied only where authorized by statute, and that the limitations on the spending power

9    described in *South Dakota v. Dole*, 483 U.S. 203 (1987), will be followed.  In relation to Count 2,

10   the AG Memorandum authoritatively clarifies the meaning and scope of Section 9(a), such that

11   the County cannot show that it is "impermissibly vague in all its applications" as required for a

12   facial vagueness challenge.  *See Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d

13   1133, 1146 (9th Cir. 2009).  And in relation to Count 3, since the AG Memorandum clarifies (1)

14   that Section 9(a) is limited to certain grants administered by DOJ and DHS, (2) that "grantees will

15   receive notice of their obligation to comply with section 1373," and (3) that the usual procedures

16   of grant making and revocation will apply, *see* AG Mem. at 1-2, the County cannot show that it

17   will be deprived of any process that may be "due."

18        Finally, in relation to Count 4, defendants have taken no "enforcement action" against

19   Santa Clara County under Section 9(a) of the Executive Order and there is no indication that any

20   such action is imminent, such that the County lacks standing to challenge that provision in the

21   Order, and its challenge is not ripe.

22        Plaintiff's claims are all the more difficult to sustain because these are facial challenges to

23   an Executive Order.  The Supreme Court has held that a facial challenge is "the most difficult

24   challenge to mount successfully."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  In this

25   context, "the challenger must establish that no set of circumstances exists under which the

26   [challenged enactment] would be valid."  *Id.*

27        As the Supreme Court has observed, "[f]acial challenges are disfavored for several

28   reasons."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  First,

1    "[c]laims of facial invalidity often rest on speculation.  As a consequence, they raise the risk of

2    premature interpretation of [enactments] on the basis of factually barebones records." *Id.* (internal

3    quotation marks omitted).  Additionally, such challenges "run contrary to the fundamental

4    principle of judicial restraint that courts should neither anticipate a question of constitutional law

5    in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is

6    required by the precise facts to which it is to be applied."  These rules apply to Executive Orders

7    as much as to statutes and regulations.  *See Am. Fed'n of State, Cty. & Mun. Employees v. Scott*,

8    717 F.3d 851, 862-63 (11th Cir. 2013); *NTEU v. Bush*, 891 F.2d 99, 101 (5th Cir. 1989).  As

9    further discussed below, Santa Clara County's Complaint fails to establish that the Executive

10   Order would be invalid under all circumstances.

11   I.      Plaintiff Lacks Standing and Its Claims Are Unripe

12           Article III of the Constitution requires that a plaintiff have standing and that its claims be

13   ripe for judicial consideration.  To have standing, the plaintiff must show that it has suffered

14   "concrete," "palpable" injury, *see Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990), and, for the

15   claims to be ripe, the challenged enactment must have been "formalized and its effects felt in a

16   concrete way."  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).  As discussed in

17   Defendants' Motion for Reconsideration or, in the Alternative, Clarification of the Court's Order

18   of April 25, 2017, the AG Memorandum makes even clearer that these requirements are not

19   satisfied here and that, therefore, all of the County's claims must be dismissed for lack of

20   standing and ripeness (Doc. 113 at 8-12).

21   II.     Plaintiff Fails to State Any Viable Claim Regarding the Executive Order,
22           Which Is an Internal Directive and Does Not Directly Affect the Plaintiff

23           In any event, the Court should dismiss all of plaintiff's challenges to Executive Order

24   13,768 because the Order only directs internal Executive Branch policy and does not directly

25   affect the plaintiff.  Courts in this Circuit have distinguished between Executive Orders that only

26   "implement policy as a product of executive authority," and those that effectuate an authority

27   explicitly vested in the President through an act of Congress.  *See Chen v. Schiltgen*, No. C-94-

28   4094 MHP, 1995 WL 317023, at *5 (N.D. Cal. May 19, 1995), *aff'd sub nom. Chen v. INS*, 95

1  F.3d 801 (9th Cir. 1996); *Legal Aid Soc'y of Alameda County v. Brennan,* 608 F.2d 1319, 1330

2  n.14 (9th Cir. 1979).

3      The former type of Executive Order does not carry the independent force of law; rather, it

4  serves only as an internal Executive Branch directive.  The Executive Order in this action falls

5  into that category.  This is even clearer in light of the AG Memorandum, which indicates that the

6  challenged provisions of the Order are directives to the Attorney General and the Secretary of

7  Homeland Security regarding their exercise of *existing* statutory and constitutional authority.  AG

8  Mem. at 1-2.  Because the Order is an internal Executive Branch policy directive, the County

9  cannot plead viable challenges against it.  *Cf. United States v. Pickard*, 100 F. Supp. 3d 981, 1011

10  (E.D. Cal. 2015) (rejecting a Tenth Amendment challenge to a statement of agency policy on the

11  grounds that a policy statement "is a very different creature from a statute" in that it does not bind

12  States as would a statute).

13      Moreover, consistent with its internal nature, the Executive Order does not directly affect

14  the plaintiff.  It does not impose conditions on federal grants or any requirements on state or local

15  jurisdictions.  Rather, the Order "establish[es] immigration enforcement as a priority for this

16  Administration," AG Mem. at 1, in an effort to "ensure that our Nation's immigration laws are

17  faithfully executed."  Exec. Order 13,768 at 1.  It directs the appropriate executive officials to

18  prioritize means for achieving that priority.

19      At no point, however, does the Order purport to directly impose affirmative obligations on

20  state or local jurisdictions.  Rather, the Attorney General and the Secretary are to enforce the

21  Order's directives "to the extent permitted by law."  Exec. Order 13,768, § 9(a).  Consistent with

22  that directive, the Executive Order "does not call for the imposition of grant conditions that would

23  violate any applicable constitutional or statutory limitation . . . [n]or does the Executive Order

24  purport to expand the existing statutory or constitutional authority of the Attorney General and

25  the Secretary . . . in any respect."  AG Mem. at 1-2.  Rather, in the event the Secretary or the

26  Attorney General determines to impose obligations on a grant program pursuant to the directives

27  contained the Order, such as certification of compliance with 8 U.S.C. § 1373, that obligation

28

Motion to Dismiss; Memorandum          12
No. 3:17-cv-00574-WHO

may be imposed only where existing legal authority allows, and only where grantees are given

"notice of their obligation[s]." *Id.* at 2.

III.     Plaintiff Fails to State a Viable Challenge to Section 9(a) of the
         Executive Order, as Elucidated by the AG Memorandum

Assuming the Court reaches the merits, plaintiff's claims under the Separation of Powers,

the Spending Clause, and the Due Process Clause should be dismissed for failure to state a claim

upon which relief can be granted, especially in light of the AG Memorandum.

A.     Plaintiff Fails to State a Viable Claim under the Separation of Powers

Count 1 in plaintiff's Complaint alleges that the grant eligibility provision of Section 9(a)

violates the Separation of Powers by "claim[ing] for the executive branch powers exclusively

assigned to Congress" under the Constitution (Doc. 1 ¶ 129).  Article I of the Constitution confers

on Congress the authority to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts

and provide for the common Defence and general Welfare of the United States."  U.S. Const. Art.

I, § 8, cl. 1.  As this Court has said, Congress may, "[i]ncident to" its spending power, "attach

conditions on the receipt of federal funds," *Cty. of Santa Clara v. Trump*, No. 17-CV-00485-

WHO, 2017 WL 1459081, at *21 (N.D. Cal. Apr. 25, 2017) (quoting *Dole*, 483 U.S. at 206), and

"Congress can delegate some discretion to the President to decide how to spend appropriated

funds" so long as "any delegation and discretion is cabined by [relevant] constitutional

boundaries."  2017 WL 1459081, at *21; *see DKT Mem'l Fund Ltd. v. AID*, 887 F.2d 275, 280-81

(D.C. Cir. 1989) (upholding conditions on spending imposed by President where statute

authorized President to set certain "terms and conditions as he may determine").

Especially as elucidated by the AG Memorandum, the grant eligibility provision is

consistent with this division of constitutional responsibilities.  The Executive Order requires the

Attorney General and Secretary of Homeland Security to condition grant eligibility on

compliance with 8 U.S.C. § 1373 "to the extent consistent with law."  The AG Memorandum

makes clear that the Order does not "purport to expand the existing statutory or constitutional

authority of the Attorney General and the Secretary . . . in any respect" and "does not call for the

imposition of grant conditions that would violate any applicable constitutional or statutory

1  limitation."  AG Mem. at 1-2.  Even more specifically, the Memorandum confirms that

2  compliance with Section 1373 will be imposed as a condition of grant eligibility only where the

3  agency "is statutorily authorized to impose such a condition."  *Id.*

4      In fact, Congress has frequently authorized agencies administering certain grant programs

5  to impose discretionary conditions on the receipt of funds.  Those statutory authorizations have

6  taken a variety of forms, including authorizing an agency to ensure that a grant recipient complies

7  "with all provisions of . . . applicable Federal laws," *see* 42 U.S.C. § 3752(a)(5)(D) (governing

8  DOJ grant program), or allowing an agency to "plac[e] special conditions" on certain grants under

9  appropriate circumstances. *See id.* § 3712(a).   Pursuant to these types of statutory authorizations,

10  DOJ has already conditioned eligibility for participation in three DOJ-administered grant

11  programs on the applicant's certification of compliance with Section 1373.  *See generally* Tr. of

12  Oral Arg. at 35:4-6, *City & Cnty. of San Francisco v. Trump*, No. 3:17-cv-00485 (N.D. Cal. Apr.

13  14, 2017) (identifying the three programs); 2017 WL 1459081, at *4 (same).

14      Further, as noted above, a party challenging the facial constitutionality of an Executive

15  Order must establish that the Order would be unconstitutional in all its applications.  *See Salerno*,

16  481 U.S. at 745 (facial challenge must establish that "no set of circumstances exists under which

17  [the enactment] would be valid"); *see also Am. Fed'n of State, Cty. & Mun. Employees*, 717 F.3d

18  at 862-63; *NTEU v. Bush*, 891 F.2d at 101.  That standard is necessarily impossible to meet in

19  relation to plaintiff's Separation of Powers claim, since Congress frequently authorizes the

20  Executive to impose discretionary conditions on the receipt of federal grants.

21      Therefore, especially in light of the AG Memorandum, plaintiff cannot state a viable claim

22  for violation of the constitutional Separation of Powers.

23      B.      Plaintiff Fails to State a Viable Claim under the Spending Clause

24      Count 1 of plaintiff's Complaint also alleges that the grant eligibility provision exceeds

25  the federal power under the Spending Clause (Doc. 1 ¶¶122-132).  This Clause provides that

26  Congress may "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide

27  for the common Defence and general Welfare of the United States."  U.S. Const. art. I, § 8, cl. 1.

28  As the Supreme Court has held, "Congress may attach conditions on the receipt of federal funds,

1     and has repeatedly employed the power to further broad policy objectives by conditioning receipt

2     of federal moneys upon compliance by the recipient with federal statutory and administrative

3     directives." *S. Dakota v. Dole*, 483 U.S. 203, 206 (1987) (internal quotation marks omitted).

4          The Court in *Dole* described certain limitations or potential limitations on the spending

5     power.  Most basically, "the exercise of the spending power must be in pursuit of 'the general

6     welfare'" – as stated in the Spending Clause itself, *id*. at 207 – and conditions on the receipt of

7     federal funds must be stated "unambiguously" so that recipients can "exercise their choice

8     knowingly, cognizant of the consequences of their participation."  *Id*. (citing *Pennhurst State Sch.*

9     *& Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) ("The legitimacy of Congress' power to legislate

10    under the spending power thus rests on whether the State voluntarily and knowingly accepts the

11    terms of the 'contract.'  There can, of course, be no knowing acceptance if a State is unaware of

12    the conditions or is unable to ascertain what is expected of it.") (citations omitted) (hereinafter

13    *Pennhurst*).  Additionally, the Court observed in *Dole*, "our cases have suggested (without

14    significant elaboration) that conditions on federal grants might be illegitimate if they are unrelated

15    to the federal interest in particular national projects or programs," and that "in some circum-

16    stances the financial inducement offered by Congress might be so coercive as to pass the point at

17    which pressure turns into compulsion."  483 U.S. at 207-08, 211 (internal quotation marks

18    omitted).  And finally, the Court said that "other constitutional provisions may provide an

19    independent bar to the conditional grant of federal funds."  *Id*. at 207-08.

20         Although these are limitations on *congressional* power, the plaintiff herein alleges that the

21    grant eligibility provision imposes conditions on spending that "would be unconstitutional even if

22    imposed by Congress" (Doc. 1 ¶ 132).  Specifically, the County alleges that the provision

23    "impose[s] a condition on federal spending retroactively"; that it imposes conditions not "reason-

24    ably related to the federal interest to which the expenditure relates"; that it "requires County law

25    enforcement officers to undertake actions that are themselves unconstitutional"; and that it

26    imposes conditions that are "profoundly coercive to the County" (*id*. ¶ 131).  Particularly in light

27    of the AG Memorandum, each of these assertions is without merit.

28

Focusing on the "knowing acceptance" aspect of *Dole* and *Pennhurst*, Santa Clara County asserts, first, that the grant eligibility provision unconstitutionally "impose[s] a condition on federal spending retroactively" (*id.* ¶ 131(i)).[5] *See* 2017 WL 1459081, at *22 ("Because states must opt-in to a federal program willingly, fully aware of the associated conditions, Congress cannot implement new conditions after-the-fact."). As described above, however, the AG Memorandum makes clear that the grant eligibility provision will be implemented by "requiring jurisdictions applying for certain [DOJ] grants to certify their compliance with federal law, including 8 U.S.C. § 1373, as a condition for receiving an award." AG Mem. at 2. Thus, the AG Memorandum continues, "[a]ll grantees will receive notice of their obligation to comply with section 1373" ahead of time, and the grant eligibility provision will be applied to "[a]ny jurisdiction that fails to certify compliance." *Id.* Necessarily, therefore, potential grantees will be able to "exercise their choice knowingly, cognizant of the consequences of their participation" in grant programs that include this condition. *Dole*, 483 U.S. at 207. The plaintiff cannot show that the grant eligibility provision will fail this aspect of *Dole* in all its applications, as necessary in this facial challenge. *See Salerno*, 481 U.S. at 745.

Second, plaintiff alleges that the grant eligibility provision imposes conditions that are not "reasonably related to the federal interest to which the expenditure relates" (Doc. 1 ¶ 131(ii)). As the Court of Appeals has observed, however, this aspect of *Dole* suggests only a "possible ground" for invalidating an enactment, and does not impose an "exacting standard":

> The Supreme Court has suggested that federal grants conditioned on compliance with federal directives *might* be illegitimate if the conditions share no relationship to the federal interest in particular national projects or programs. This possible ground for invalidating a Spending Clause statute, which only suggests that the legislation *might* be illegitimate without demonstrating a nexus between the conditions and a specified national interest, is a far cry from imposing an exacting standard for relatedness.

*Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) (citing *Dole*, 483 U.S. at 207).

---

[5] Plaintiff does not allege that the grant eligibility provision violates the requirement that federal grant conditions be stated "unambiguously." *Dole*, 483 U.S. at 207. In any event, for the reasons stated herein, any such claim would be without merit in light of the AG Memorandum.

1    Thus, conditions on federal funding must only "bear some relationship to the purpose of the

2    federal spending."  314 F.3d at 1067 (quoting *N.Y. v. United States*, 505 U.S. 144, 167 (1992));

3    *see Barbour v. Washington Metro. Area Transit Auth.*, 374 F.3d 1161, 1168 (D.C. Cir. 2004)

4    (noting that Supreme Court has never "overturned Spending Clause legislation on relatedness

5    grounds").

6    　　　　Especially as implemented by the AG Memorandum, the grant eligibility provision easily

7    meets this standard.  The provision will be applied only to grants administered by the Department

8    of Justice and the Department of Homeland Security – that is, the primary law enforcement

9    agency of the United States and the agency responsible for the admission and removal of non-

10   citizens.  AG Mem. at 1.  DHS is the very agency whose communication with state and local

11   government officials is protected by Section 1373.  Moreover, the grant eligibility provision will

12   be applied only to "certain . . . grants" as to which the agency "is statutorily authorized to impose

13   such a condition."  *Id*. at 2.  Plaintiff alleges that the grant eligibility provision "applies to, and

14   would bar the County from being eligible for funding for, Medicare and Medicaid programs,

15   transportation, child welfare services, elder care programs, mental health services, immunization

16   and vaccine programs" (Doc. 1 ¶ 131(ii)).  The AG Memorandum has eliminated any possibility

17   that the grant eligibility provision could be applied in relation to any of those categories of federal

18   funding.

19   　　　　Third, plaintiff alleges that the grant eligibility provision exceeds the spending power by

20   "requir[ing] County law enforcement officers to undertake actions that are themselves

21   unconstitutional" (Doc. 1 ¶ 131(iii)).  The Court in *Dole* emphasized the narrowness on this

22   limitation on the federal spending power, noting that "the 'independent constitutional bar'

23   limitation . . . is not . . . a prohibition on the indirect achievement of objectives which Congress is

24   not empowered to achieve directly."  483 U.S. at 210.  Rather, the Court said, this limitation

25   "stands for the unexceptionable proposition that the power may not be used to induce the States to

26   engage in activities that would themselves be unconstitutional.  Thus, for example, a grant of

27   federal funds conditioned on invidiously discriminatory state action or the infliction of cruel and

28

Motion to Dismiss; Memorandum                    17
No. 3:17-cv-00574-WHO

1   unusual punishment would be an illegitimate exercise of the Congress' broad spending power."

2   *Id*. at 210-11.

3       The grant eligibility provision does not "induce" Santa Clara County to violate any such

4   constitutional prohibition.  As stated in the AG Memorandum, that provision merely requires

5   grantees to certify compliance with 8 U.S.C. § 1373, which proscribes prohibiting or restricting

6   the sharing of information with federal immigration authorities.  *See* AG Mem. at 2.  That is not,

7   however, the kind of "independent [constitutional] bar to the conditional grant of federal funds"

8   that the Supreme Court contemplated in *Dole*.  483 U.S. at 207-08.  Plaintiff alleges that the

9   Executive Order will "require County law enforcement officers to comply with federal directives

10  regarding detainer actions" in violation of the Fourth Amendment to the Constitution (Doc. 1

11  ¶ 131(iii)), but the AG Memorandum says nothing about immigration detainer requests, and, in

12  any event, state or local law enforcement's decision to exercise their authority to cooperate with

13  such requests is fully consistent with the Fourth Amendment.  Moreover, the AG Memorandum

14  states affirmatively that the grant eligibility provision "does not call for the imposition of grant

15  conditions that would violate any applicable constitutional or statutory limitation."  AG Mem. at

16  1-2.  Thus, Santa Clara County cannot show that the grant eligibility provision will require the

17  County to "undertake actions that are themselves unconstitutional" in all circumstances.  *Cf.*

18  *Salerno*, 481 U.S. at 745.

19      Fourth and finally, plaintiff alleges that the grant eligibility provision imposes conditions

20  that are "profoundly coercive to the County" (Doc. 1 ¶ 131(iv)).  As the Court of Appeals has

21  observed, however, the Supreme Court in *Dole* concluded that it would find a violation of this

22  potential limitation, "if ever, [only] in the most extraordinary circumstances."  *State of Cal. v.*

23  *United States*, 104 F.3d 1086, 1092 (9th Cir. 1997) (citing *Dole,* 483 U.S. at 210-11).  Thus, for

24  example, the Court in *Dole* found no constitutional violation where a State risked losing 5% of its

25  highway funds for refusing to implement a federal minimum drinking age.  *Dole*, 483 U.S. at 211.

26  Conversely, the Court held more recently that Congress violated anti-coercion principles by

27  subjecting States to a risk of losing "all federal Medicaid funding," which constituted "over 10

28  percent of a State's overall budget," if they declined to adopt certain Medicaid expansion actions.

1   *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2664 (2012) (hereinafter *NFIB*).  In

2   that case, "the sheer size of this federal spending program in relation to state expenditures"

3   rendered the condition coercive.  *Id.* at 2663.  As the Court held, however, "courts should not

4   conclude that [an enactment] is unconstitutional on this ground unless the coercive nature of an

5   offer is unmistakably clear."  *Id.* at 2662.

6          Under this precedent, plaintiff's "coerciveness" claim must fail, especially in light of the

7   AG Memorandum.  As noted already, the grant eligibility provision of the Executive Order "will

8   be applied solely to [certain] federal grants administered by the Department of Justice or the

9   Department of Homeland Security, and not to other sources of federal funding."  AG Mem. at 1.

10  Moreover, DOJ has so far identified only three grant programs whose eligibility will be condi-

11  tioned on compliance with Section 1373.  *See* Tr. of Oral Arg. at 35:2-9.  According to its

12  complaint, Santa Clara County previously received funds under two of those programs, but has

13  decided not to "apply for or accept future" funds under either program, in order to "retain its

14  discretion" regarding the sharing of immigration status information (Doc. 1 at 14 n.3).  In these

15  circumstances, the plaintiff has fallen far short of stating a viable claim that the "coercive nature"

16  of the grant eligibility provision is "unmistakably clear."  *See NFIB*, 132 S. Ct. at 2662.

17         In short, particularly as elucidated by the AG Memorandum, the grant eligibility provision

18  in the Executive Order is only a "relatively mild encouragement" to comply with Section 1373.

19  483 U.S. at 211.

20         C.     Plaintiff Fails to State a Viable Claim that Section 9(a)
21                Is Unconstitutionally Vague

22         Plaintiff's next claim, in Count 2 of the Complaint, is that Section 9(a) is unconstitu-

23  tionally vague in violation of the Due Process Clause (Doc. 1 ¶¶ 138-141).  An enactment may be

24  unconstitutionally vague if it "fails to provide a reasonable opportunity to know what conduct is

25  prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement."  *Tucson*

26  *Woman's Clinic v. Eden*, 379 F.3d 531, 554 (9th Cir. 2004) (citation omitted).  The Supreme

27  Court, however, has cautioned against engaging in a vagueness analysis in the pre-enforcement

28  context, particularly in matters that do not involve First Amendment rights.  *See Wash. State*

1    *Grange v. Wash. State Republican Party*, 552 U.S. 442, 50 (2008) (noting that facial vagueness

2    challenges are "disfavored for several reasons," including because such claims often "rest on

3    speculation").  "Outside the First Amendment context, a plaintiff alleging facial vagueness must

4    show that the enactment is impermissibly vague in all its applications." *Humanitarian Law*

5    *Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009) (internal quotation marks

6    omitted).  This is consistent with the rule that a party challenging an enactment on its face must

7    show that "no set of circumstances exists under which the [enactment] would be valid." *Salerno*,

8    481 U.S. at 745.  Moreover, courts will consider whether a provision is fairly "amenable to a

9    limiting construction" before striking it down as vague. *Skilling v. United States*, 561 U.S. 358,

10    405 (2010).  Thus, a plaintiff bringing a pre-enforcement facial vagueness challenge "bears a

11    heavy burden." *SEIU, Local 82 v. D.C.*, 608 F. Supp. 1434, 1446-47 (D.D.C. 1985).

12        In this case, the County argues that "Section 9(a) of the Executive Order fails to define

13    key terms, such as 'sanctuary jurisdiction,' 'Federal grants,' 'law enforcement purposes,'

14    'appropriate enforcement action,' and 'entity,' as well as . . . 'statute, policy, or practice that

15    prevents or hinders the enforcement of Federal law'" (Doc. 1 ¶ 139).  As discussed above,

16    however, the Order is an internal directive to Executive Branch officials and does not have any

17    direct effect on the plaintiff.  Therefore, there can be no legitimate question as to whether the

18    Order provides "reasonable" notice to the plaintiff. *See Tucson Woman's Clinic*, 379 F.3d at 554.

19    In any event, the AG Memorandum authoritatively clarifies the meaning of Section 9(a),

20    specifying, for example, that the "the term 'sanctuary jurisdiction' will refer only to jurisdictions

21    that "willfully refuse to comply with 8 U.S.C. 1373." AG Mem. at 2.  Additionally, the Memo-

22    randum makes clear that the "Federal grants" to which Section 9(a) will apply are only those

23    "grants administered by the Department of Justice or the Department of Homeland Security" as to

24    which the agency is "statutorily authorized" to impose the condition of compliance with 8 U.S.C.

25    § 1373. *Id*. at 1-2.

26        Other aspects of plaintiff's vagueness challenge "rest [entirely] on speculation." *See*

27    *Wash. State Grange*, 552 U.S. at 50.  Undeniably and uncontroversially, the Attorney General is

28    authorized to take certain "enforcement actions" against a State and local jurisdiction whose

1  "statute, policy, or practice . . . prevents or hinders the enforcement of Federal law."  *See Arizona*

2  *v. United States*, 567 U.S. 387, 132 S. Ct. 2492 (2012) (asserting that certain state laws regarding

3  non-citizens are preempted by federal law); *United States v. South Carolina*, 720 F.3d 518 (4th

4  Cir. 2013) (same); *United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012) (same).  There is no

5  indication that the Attorney General will take any unauthorized or inappropriate actions pursuant

6  to this provision in Section 9(a).  Thus, the County cannot show that President's instruction to

7  take "appropriate" action against such statutes, policies, or practices is "impermissibly vague in

8  all its applications."  *See Humanitarian Law Project*, 578 F.3d at 1146.[6]

9  　　　Accordingly, plaintiff's Fifth Amendment vagueness claim must be dismissed for failure

10  to state a claim on which relief can be granted.

11  　　　D.　　Plaintiff Fails to State a Viable Claim Regarding Procedural Due Process

12  　　　Count 3 of plaintiff's Complaint alleges that Section 9(a) of the Order "deprives the

13  County of its procedural due process rights under the Fifth Amendment because it grants the

14  Attorney General and Secretary . . . unfettered discretion to deprive the County of all federal

15  funds, with no opportunity to review, challenge, or even obtain notice that the deprivation is

16  coming" (Doc. ¶ 146).  Under the Fifth Amendment, the government may not deprive anyone of

17  "property" without "due process of law."  Where a constitutionally protected property interest

18  exists, what type of procedural protections are "due" depends on the circumstances, including

19  "the risk of an erroneous deprivation," the "probable value" of procedural safeguards, and the

20  government's interests.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Plaintiff asserts that it

21  "has a constitutionally protectable property interest in the federal funds it relies on to provide

22  essential services to 1.9 million residents" (Doc. 1 ¶ 146).

23

24  　　　[6] The same is true of plaintiff's allegation (Doc. 1 ¶ 141) that vagueness principles are

25  violated by Section 6 of the Executive Order, which instructs the Secretary of Homeland Security
to "ensure the assessment and collection of all fines and penalties that the Secretary is *authorized*

26  *under the law* to assess and collect from aliens unlawfully present in the United States and from
those who facilitate their presence in the United States" (emphasis added).  The INA provides for

27  several such fines and penalties. *See*, e.*g*., 8 U.S.C. §§ 1324 (penalties for bringing in and
harboring certain aliens), 1324a (penalties for unlawful employment of aliens), 1325 (civil

28  penalties for improper entry).

Motion to Dismiss; Memorandum　　　21
No. 3:17-cv-00574-WHO

In light of the AG Memorandum, however, Section 9(a) does not apply to funding in which the County might have a constitutionally protectable interest, and, in any event, the applicable procedures will be provided.  As discussed earlier, the grant eligibility provision of Section 9(a) will be applied only to certain grants administered by DOJ and DHS, *see* AG Mem. at 1, and DOJ has so far identified only three programs in which eligibility will depend on compliance with Section 1373.  *See* Tr. of Oral Arg. at 35:2-9.  The County does not allege – and cannot show – that these programs provide "federal funds it relies on to provide essential services to 1.9 million residents" (Doc. 1 ¶ 146).  Moreover, the AG Memorandum indicates that compliance with Section 1373 will be included as a grant condition only where the agency "is statutorily authorized to impose such a condition," and that "[a]ll grantees will receive notice of their obligation to comply with section 1373."  AG Mem. at 2.  Additionally, by specifying that this condition be exercised "to the extent consistent with law," Section 9(a) incorporates the governing legal limitations, such as the procedural requirements for making or revoking federal grants.  *See*, *e.g*., 2 C.F.R. § 200.341 (hearings and appeals in federal grant-making); 28 C.F.R. pt. 18 (DOJ Office of Justice Programs Hearing and Appeal Procedures).

Therefore, plaintiff has not stated a claim on which relief can be granted regarding procedural due process.

IV.   Plaintiff's Claim that the "Appropriate Enforcement Action" Provision
of Section 9(a) Violates the Tenth Amendment Is Non-Justiciable

Plaintiff's last claim, in Count 4 of the Complaint, is that the Tenth Amendment is violated by the provision in Section 9(a) that instructs the Attorney General to "take appropriate enforcement action against any entity that violates 8 U.S.C. 1373, or which has in effect a statute, policy, or practice that prevents or hinders the enforcement of Federal law" (Doc. 1 ¶¶ 149-152).  The County characterizes various statements by public officials as meaning that defendants "interpret[] the Executive Order to require County law enforcement officers to comply with federal directives regarding detainer actions by U.S. Immigration & Customs Enforcement'" (Doc. 1 ¶ 131(iii)).  From this, the County leaps to the conclusion that this provision in Section 9(a) "commandeers state and local officials" in violation of the Tenth Amendment by requiring

1   them to "imprison individuals subject to removal at the request of federal officials" and

2   "transforming [state and local officials] into federal apparatchiks" (*id*. ¶¶ 13, 88, 151).  Plaintiff

3   does not allege, however, that the defendants have taken any "enforcement action" against it or

4   have indicated that any such action is imminent.  Accordingly, this claim is non-justiciable and

5   must be dismissed under principles of standing and ripeness.

6       Under Article III of the Constitution, the jurisdiction of the federal courts extends only to

7   "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Matters outside this rubric are "non-

8   justiciable."  *Ore. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc*., 288

9   F.3d 414, 416 (9th Cir. 2002).  Two principles of justiciability bar jurisdiction over plaintiff's

10  Count Three:  standing and ripeness.  "While standing is concerned with *who* is a proper party to

11  litigate a particular matter, the doctrines of mootness and ripeness determine *when* that litigation

12  may occur."  *Haw. Cty. Green Party v. Clinton*, 14 F. Supp. 2d 1198, 1201 (D. Haw. 1998).

13  Where a plaintiff lacks standing or its claims are unripe, the court lacks jurisdiction.  *See Nat'l*

14  *Inst. of Family & Life Advocates v. Harris*, 839 F.3d 823, 832 (9th Cir. 2016).

15      To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must

16  demonstrate an "injury in fact," a "fairly traceable" causal connection between the injury and

17  defendant's conduct, and redressability.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

18  102-03 (1998).  The injury needed for constitutional standing must be "concrete," "objective,"

19  and "palpable," not merely "abstract" or "subjective."  *See Whitmore v. Arkansas*, 495 U.S. 149,

20  155 (1990); *Bigelow v. Virginia*, 421 U.S. 809, 816-17 (1975).  Additionally, the injury must be

21  "certainly impending" rather than "speculative."  *Whitmore*, 495 U.S. at 157, 158.  "[S]tanding is

22  perhaps the most important of [the jurisdictional] doctrines."  *FW/PBS, Inc. v. City of Dallas*, 493

23  U.S. 215, 231 (1990) (internal quotation marks omitted).

24      Constitutional justiciability also requires that a dispute be ripe for judicial consideration –

25  that is, that the challenged action "has been formalized and its effects felt in a concrete way by the

26  challenging parties."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).  In other words, "[a]

27  claim is not ripe for adjudication [under the Constitution] if it rests upon contingent future events

28

Motion to Dismiss; Memorandum          23
No. 3:17-cv-00574-WHO

1    that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523

2    U.S. 296, 300 (1998) (internal quotation marks omitted).

3         In assessing constitutional ripeness in the context of a "pre-enforcement challenge" to a

4    statutory or administrative enactment, the courts consider "both the fitness of the issues for

5    judicial decision and the hardship to the parties of withholding court consideration." *Abbott*

6    *Labs.*, 387 U.S. at 149.  "A claim is fit for decision if the issues raised are primarily legal, do not

7    require further factual development, and the challenged action is final." *Standard Alaska Prod.*

8    *Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989).  In other words, a court considers whether the

9    court and the parties would "benefit from deferring review until the agency's policies have

10   crystallized and the question arises in some more concrete and final form." *Eagle-Picher Indus.,*

11   *Inc. v. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985) (internal quotation marks omitted); *see U.S. W.*

12   *Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1119 (9th Cir. 1999) (finding that claim was not

13   fit for decision where administrative proceedings had not concluded and court would "benefit"

14   from outcome of those proceedings).  Finally, "[t]o meet the hardship requirement, a litigant must

15   show that withholding review would result in direct and immediate hardship and would entail

16   more than possible financial loss." *Winter v. California Med. Review, Inc.*, 900 F.2d 1322, 1325

17   (9th Cir. 1989) (internal quotation marks omitted).

18        Applying these standards here, the plaintiff cannot show the "injury in fact" needed for

19   constitutional standing to challenge the "appropriate enforcement action" provision, *Steel Co.*,

20   523 U.S. at 102-03, and this claim is not constitutionally ripe for judicial review,  *Abbott Labs.*,

21   387 U.S. at 148-49.  The defendants have taken no enforcement action against Santa Clara

22   County under Section 9(a) of the Executive Order, and there is no indication that any such action

23   is imminent.  Thus, the plaintiff has not suffered any "concrete" injury due to this provision, and

24   no such injury is "certainly impending." *See Whitmore*, 495 U.S. at 155, 158.  Similarly, since the

25   federal government might never take enforcement action against the County under Section 9(a),

26   this claim rests on "contingent future events that . . . may not occur at all," *see Texas*, 523 U.S. at

27   300, and the County cannot show any "direct and immediate hardship" from withholding review,

28   *see Winter*, 900 F.2d at 1325.

1    Nor could the plaintiff allege that the mere possibility of enforcement action has inflicted

2    any cognizable injury.  Indeed, there is always a possibility that the Federal Government may sue

3    a State or local government alleging that the defendant's laws or policies are constitutionally

4    preempted.  *See Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492 (2012); *United States v.*

5    *South Carolina*, 720 F.3d 518 (4th Cir. 2013); *United States v. Alabama*, 691 F.3d 1269 (11th

6    Cir. 2012).  This authority exists entirely independent of the Executive Order.  *Id.*  Further, if

7    such action were to occur, the County would have an opportunity at that time to challenge its

8    propriety and merits.

9    Accordingly, Count 4 of the Complaint should be dismissed for lack of subject matter

10   jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

11   <u>CONCLUSION</u>

12   For the reasons discussed above, all of plaintiff's claims should be dismissed with

13   prejudice.

14   Dated:  June 7, 2017

15                                        Respectfully submitted,

16                                        CHAD A. READLER
                                          Acting Assistant Attorney General
17
                                          BRIAN STRETCH
18                                        United States Attorney

19                                        JOHN R. TYLER
                                          Assistant Director
20

21                                        /s/ W. Scott Simpson

22                                        _____
                                          W. SCOTT SIMPSON (Va. Bar #27487)
23                                        Senior Trial Counsel

24                                        Attorneys, Department of Justice
                                          Civil Division, Room 7210
25                                        Federal Programs Branch
                                          Post Office Box 883
26                                        Washington, D.C. 20044
                                          Telephone:   (202) 514-3495
27                                        Facsimile:   (202) 616-8470
                                          E-mail:      scott.simpson@usdoj.gov
28

Motion to Dismiss; Memorandum                25
No. 3:17-cv-00574-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNSEL FOR DEFENDANTS
DONALD J. TRUMP, President of the
United States; JOHN F. KELLY, Secretary of
Homeland Security; JEFFERSON B.
SESSIONS, III, Attorney General of
the United States; MICK MULVANEY,
Director of the Office of Management and
Budget